CANAL CONSTRUCTION COMPANY *v.* CLEM.

Opinion delivered March 31, 1924.

1. NEGLIGENCE—LIABILITY OF INDEPENDENT CONTRACTOR.—As a general rule, an independent contractor is not liable for injuries to a third person occurring after the contractor has completed the work and turned it over to the owner and the same has been accepted by him, though the injury resulted from the contractor's failure to properly carry out his contract.

2. NEGLIGENCE—LIABILITY OF INDEPENDENT CONTRACTOR.—The general rule that a contractor is not liable for injuries to a third person occurring after he has completed the work and turned it over is subject to certain qualifications, as where the work is a nuisance *per se,* or where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons, in which cases the contractor is liable.

3. NEGLIGENCE—LIABILITY OF INDEPENDENT CONTRACTOR.—Where, in the construction of a canal, it became necessary to remove a highway bridge, which the contractor was under no duty to replace, his failure, in replacing the bridge, to nail down the flooring or to place the stringers on a level, thereby creating a defective condition, did not render him liable for injuries sustained by plaintiff while using the bridge six months afterwards; it not appearing that the bridge was left in such defective condition that the contractor ought to have known that the use of it would be attended by imminent danger to those attempting to pass over it.

Appeal from Poinsett Circuit Court; *W. W. Bandy,* Judge; reversed.

STATEMENT OF FACTS.

W. T. Clem sued the Canal Construction Company to recover damages on account of injuries received by himself and wife, while crossing a bridge over a public highway, which injuries were caused by the negligence in the construction of the bridge by the defendant.

It appears from the record that the Canal Construction Company made a contract with a drainage district to construct a drainage canal and laterals in Poinsett County, Arkansas. The drainage canal was constructed under a special act of the Legislature, which required the drainage district to build a bridge wherever the canal was dug across a public road. The Canal Construction Company had no contract with the district for the construction of bridges, or the replacement of those which it was necessary to tear down in digging the canal. During the course of construction of the canal, in the fall of 1920, it became necessary for the Canal Construction Company to tear out Little Bay bridge, which was across the channel of a watercourse called Little Bay, and which was to be the main channel of the drainage ditch. The bridge was on a public road of the county, and was the only access to market of the people who lived across Little Bay. After the Canal Construction Company tore out the bridge and dug its canal past the bridge site, the county judge made a contract with a sawmill man to rebuild the bridge. The bridge was rebuilt at once in a substantial manner, so that lumber wagons could be carried back and forth across it. In about six weeks thereafter it became necessary for the Canal Construction Company to again pass the bridge with its boats, which were used in digging the canal and its laterals, and it thereby became necessary to tear down the bridge again. According to the evidence for the plaintiff, this was done, and the Canal Construction Company, as soon as its boats passed through, undertook the work of rebuilding the bridge. In putting the bridge back it did not level up the stringers, so that the north side of the bridge was higher than the south side. The flooring on the bridge was laid by the Canal Construction Company, but it was not nailed down. Shortly afterwards the high water washed out the middle bent of the bridge. This made the bridge more dangerous, because it would sway up and down and scare a team. Some months after this the plaintiff with his wife and family started to drive across the

bridge in a wagon on their way to market. One of the mules stepped on a plank on the outside of a stringer, and this caused the plank to tip up and throw the mule off of the bridge. The falling mule dragged the other mule and the wagon and its occupants into the stream. The wife of W. T. Clem was drowned, and he was injured. He lived in the neighborhood, but had not crossed the bridge since it was rebuilt, and did not know that the planks were loose.

According to the testimony of the defendant, the bridge was torn out by it and replaced, except the flooring, on the first day of January, 1920. In this connection it may be stated that the accident occurred on the 18th day of June, 1920. The Canal Construction Company was under no duty to replace the bridge, and only did so at the request of the residents of the neighborhood who had to cross the bridge in order to go to their nearest market place. These persons did not have any appliances with which to replace the stringers and heavy timbers of the bridge. The Canal Construction Company had such appliances, and, for this reason, replaced the stringers and the heavy timbers on the bridge. It had nothing to do with the replacement of the flooring. It left a hammer and some nails there, to be used by the residents of the neighborhood in replacing the flooring, but its servants do not know whether or not they were so used.

The jury returned a verdict in favor of the plaintiff, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*A. B. Shafer, J. Brinkerhoff* and *J. J. Mardis,* for appellant.

Appellant owed no duty to the county, district or appellee with respect to the replacement of the bridge; it was outside its contract. Duties of imperfect obligation imposed only by generosity, kindness, or charity are excluded. 100 U. S. 95; 115 N. Y. 55. For liability under such cases citation is made to the following cases: 109 Fed. 294; 98 Ark. 399; 123 S. W. 264; 165 Ky. 752; 127 S. W. 143; 6 So. 914; 30 La. Ann. 345; 68 N. Y. Supp.

407; 94 Ark. 380; 122 N. E. 1; 145 Ind. 255; 140 Pa. St. 70; 89 S. W. 330. There was an efficient intervening cause, which would relieve appellant from any liability, in that the middle bent of the bridge washed out shortly after reconstruction. See 100 S. W. 759; 87 Ark. 576; 23 Wend. (N. Y.) 455. It was the duty of the public or the county to repair the bridge. 43 Kan. 509; 28 Lum. 344 (N. Y.); 80 Ind. 478; 11 Barb. 457 (N. Y.); 20 N. Y. S. 389. The uncontradicted evidence is to the effect that appellant did not repair the bridge in whole, or even attempt to do so, but what it did was gratuitous. There is no evidence to sustain the verdict. 53 Ark. 96; 51 S. W. 319; 55 S. W. 940; 97 S. W. 56; 115 S. W. 942; 234 S. W. 50. When the effect of such testimony is to defeat the action, the court should so instruct, and direct a verdict for defendant. 250 S. W. 902. See also 128 Miss. 593; 251 S. W. 34. One suing under Lord Campbell's Act is barred of recovery by his contributory negligence. 139 S. W. 301; 23 A. L. R. 643.

*C. T. Carpenter,* for appellee.

It is the duty of any one cutting a public highway to restore it to its former condition. Ann. Cas. 1914A, 548; 43 L. R. A. 699; 13 R. C. L. 262; 9 A. S. R. 8651; 30 L. R. A. (N. S.) 1111; 54 Ark. 133; 104 Ark. 63; 118 Ark. 1. While it is true that drainage districts are exempt from liability for damages, this immunity does not extend to independent contractors. 110 Ark. 422; 131 Ark. 286; 118 Ark. 1. Appellant was liable because of the negligent manner in which it reconstructed the bridge. 54 Ark. 131; 69 Ark. 402; 104 Ark. 63. A master is liable, even though he did not know of or authorize acts of his servants which were done within the scope of employment. 93 Ark. 398; 40 Ark. 298; 111 Ark. 213. Whether an act done is in the line of a servant's duty is a question for the jury. 48 Ark. 181. A traveler injured as a result of a defect in a highway is not debarred from recovering therefor by the fact that he knew the bridge to be unsafe, unless the danger was obvious and imminent. 4 R. C. L. 213, par. 19; 55 L. R. A. 162; 27 L. R. A.

.(N. S.) 832; 104 Mass. 73.   See also 52 Ark. 368; 102 Ark. 258; 48 L. R. A. 455; 2 L. R. A. 450.

HART, J., (after stating the facts). The court told the jury that the defendant was under no duty to replace the bridge, but that, having undertaken to do so, it would be liable to the plaintiff if the accident was caused by its negligence in replacing the flooring of the bridge without nailing it down.

All the witnesses testified that the floor of the bridge was relaid without nailing it down.   The witnesses for the plaintiff testified that this was done by the defendant, and the witnesses for the defendant testified that they had nothing to do with replacing the flooring on the bridge.   They only replaced the heavy timbers, and left the flooring to be replaced by those who intended to use the bridge.

The general rule is well established that an independent contractor is not liable for injuries to a third person occurring after the contractor has completed the work and turned it over to the owner and the same has been accepted by him, though the injury resulted from the contractor's failure to properly carry out his contract.

In Thompson on Negligence, § 686, the rule is stated as follows: "Subjec t to some qualifications, among them the cases where the work is a nuisance *per se,* or where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons, the general rule is that, after the contractor has turned the work over and it has been accepted by the proprietor, the contractor incurs no further liability to third parties, by reason of the condition of the work; but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor.   The contractor remains liable, if at all, only to the proprietor for a breach of his contract."

As sustaining the general rule, we cite the following cases:   *Young* v. *Smith & Kelly Co.* 134 Ga. 475, 4 Ann. Cas. 226; *McCrorey* v. *Thomas,* 109 Va. 376, 17 Ann. Cas. 373; *Albany* v. *Cunliff,* 2 Comstock (N. Y.), 165; *Curtin* v.

*Somerset* (Pa.), 12 L. R. A. 322; *Devlin* v. *Smith,* 89 N. Y. 470; 42 Am. Repts. 311; *Thornton* v. *Dow,* 60 Wash. 622; 32 L. R. A. (N. S.) 968; and *O'Brien* v. *American Bridge Co.* 110 Minn. 364, 32 L. R. A. (N. S.) 980.

An able and exhaustive opinion was written by Judge JAGGARD in the case last cited. All the principal cases bearing on the general rule and the exceptions to it are cited and reviewed. In that case, five or six weeks after the acceptance of the bridge it collapsed while the plaintiff and others were crossing over it. The evidence for the plaintiff tended to show that the bridge was so defective as to be immediately dangerous to the safety of those crossing it, and that the defects were so hidden or concealed that a reasonably careful inspection would not have disclosed them and the dangers resulting from them. The evidence showed that the fall of the bridge was caused by defective piers and an insecure foundation. The court said that the bridge company could not have avoided knowing the character of the underlying soil and of the imperfect materials used and the improper methods employed in the construction of the foundation and the piers. The dangerous condition of the foundation was concealed by the waters above it, and the piers were defective by reason of rotten cement which was also hidden from ordinary observance. The danger in the use of the bridge was immediate, and the court said that the jury was justified in finding that, within a short time after use, the bridge must fall; and that the use of the bridge would be injury and probably death to persons who would attempt to cross over it. Hence it was held that the facts established by the plaintiff made out a case for the jury on the question of negligence, within the exceptions to the general rule above stated.

An exception to the general rule was recognized by this court in the case of *Southern Express Co.* v. *Texarkana Water Co.,* 54 Ark. 131. In that case it was held that one who digs a trench in a public street is liable for an injury resulting from the negligent performance of the duty to restore the street to the condition it was in before

the excavation, as where he fails to anticipate and provide for the natural effect of rains upon the earth excavated and replaced. In that case the rainfall came in the ordinary course of nature and displaced the newly filled earth. The defendant was bound to have known that this would be the natural consequence of its negligence in failing to properly replace the earth. The defendant knew that, if not properly replaced, the earth would sink in the street after the first rain, and thereby create a condition that would be immediately dangerous to the traveling public, if not an actual nuisance. Hence it came within the well-recognized exception to the general rule.

In the later case of *Memphis Asphalt & Pav. Co.* v. *Fleming,* 96 Ark. 442, the general rule itself was recognized and the facts held to bring the case within its application. In that case a construction company, under its contract with an improvement district, constructed a sidewalk along a branch without erecting a guard rail or barrier to keep travelers from stepping or falling into the branch. The foundation of the action was the negligence of the construction company in not placing a guard rail to warn travelers against danger. The court held that the facts brought the case within the general rule, and that there was no liability on the part of the construction company. The court further held that the rule does not require a formal acceptance of the contractor's work, and that the liability of the contractor will cease with a practical acceptance after the completion of the work.

We think the facts in the present case bring it within the general rule. Conceding that the flooring of the bridge was not nailed down and that the stringers were not level, it cannot be said that this defective condition made the bridge so immediately and certainly dangerous that the Canal Construction Company ought to have known that the use of it would be attended by imminent danger to those attempting to pass over it.

In this connection we must take into consideration that one of the bents was washed out some time after the replacement of the bridge, and that the fact that the

flooring was not nailed down was obvious to any one. This condition had existed for six months after the bridge had been rebuilt, and during all this time it was being used for the purpose of hauling lumber and other materials across it. Its defective condition was in no wise concealed from the traveling public. The Canal Construction Company in no sense had any control over it. It was not required to repair the bent, which was injured by logs floating down during a freshet after the bridge had been replaced. Thus it will be seen that it was not shown that the defendant did work which was, or should have been, known to be imminently dangerous to persons who were to make use of it; nor was there a concealment of such dangerous condition.

Under the facts, when considered in the light most favorable to the plaintiff, it cannot be said that the work done by the defendant on the bridge constituted a nuisance *per se,* or that it was replaced by the defendant in a manner so negligently defective as to be immediately and imminently dangerous to third persons who might use it.

It results from the views that we have expressed that the judgment must be reversed, and, it appearing that the case has been fully developed, no useful purpose could be served by remanding it for a new trial, and the cause of action will be dismissed here.