REYNOLDS *v.* MANLEY.

5-176                                                        265 S. W. 2d 714

Opinion delivered March 15, 1954.

*Mehaffy, Smith & Williams, Pat Mehaffy, John T. Williams* and *R. Ben Allen,* for appellant.

*Bates, Poe & Bates,* for appellee.

WARD, J. This is an appeal from a judgment against appellants based on injuries received in an automobile collision and in favor of John Manley, John Manley as guardian of his three children, and John Manley as administrator of the estate of his wife. The principal ground urged by appellants for a reversal is that there is no substantial evidence to support the verdict of the jury and the judgment of the trial court.

On October 27, 1951, John Manley, accompanied by his wife, Lucy, and their three minor children, was driving south on Highway No. 71 toward Texarkana. As he was approaching the south end of Index bridge a large trailer truck going north came to a halt supposedly for the purpose of allowing Manley's car to clear the bridge.

At this time a pickup truck driven by J. P. Harrison, one of the defendants in the trial court, had come up behind the trailer truck. Because of this situation, it is alleged, Manley was forced to pull his car to the right off the 18-foot concrete highway and onto a concrete extension slab which extended from the bridge south along the west side of the main highway for a distance of approximately 200 feet, and when he came to the end of the extension slab, it is contended, the right wheel of his car went off the end of the extension slab and into a hole or rut. This, it is contended, caused him to lose control of his car and caused his car to swerve to the left into the direct path of a car being driven north at the time by one Perry Lay. As a result of the collision Manley and his three children were injured and his wife, Lucy, died a few days later. The extent of the injuries and the amount of recovery are matters that need not be discussed in this opinion.

The concrete extension slab mentioned above is approximately 3 feet wide at the bridge and the south end is approximately 14 inches wide. This extension slab was constructed by appellants pursuant to a contract with the State Highway Department. The U. S. Bureau of Public Roads participated with the State in the construction project. Incidental to the contract it was a part of appellants' job to backfill on the west side and at the south end of the extension slab and also repair or build the shoulder on the west side of the concrete road and immediately south of the end of the extension slab for a distance of approximately 34 feet. The material to be used in backfilling and in building the shoulder is one of the questions to be discussed later.

Appellees' action is based on the alleged negligence of appellants in the construction of the extension slab and the shoulder. Hereafter we will refer to the shoulder as the extension shoulder. In their original complaint appellees alleged that appellants were negligent in that they "dug an excavation and opening several feet in length extending along the west side of the slab approximately one foot in width and approximately one foot in depth and left there without guards and it was [left]

open without giving warning, which created a hidden or indiscernible hazard dangerous to the public.'' Appellees have apparently abandoned this specific allegation of negligence except insofar as it relates to the allegations contained in their amendment to the complaint where appellants' negligence is stated thus: Appellants left ''the hole opening an excavation described in the original complaint in a careless and negligent manner, making a hole and opening apparent and imminently dangerous in the public highway where motorists were likely to drive their cars, and after so doing then refilled, and left, the hole and opening with improper materials and dirt without tamping the fill, as should have been done, which acts were carelessness and negligence, and by not so tamping and packing the sand with the proper dirt and materials went and left a hole apparent and imminently dangerous. . . .'' The undisputed proof shows [and appellees do not contend otherwise] that when the contractors finished the job there was no hole left in the extension shoulder and therefore, as we see it, appellees predicate negligence on the allegation that appellants, in backfilling the extension slab and in constructing the extension shoulder used (a) improper materials and (b) did not properly tamp and pack the materials used.

The record shows without contradiction that appellants completed their contract on May 5, 1951; that the job was inspected on May 9, 1951, by appellants' superintendent and by the resident engineer and the assistant construction engineer in charge of bridge work for the Highway Department; that the job was formally inspected on May 22, 1951, by the State Highway Department engineer and by the officer in charge of construction and maintenance for the U. S. Bureau of Public Roads; that on May 22, 1951, the State Highway Department finally and fully accepted the job from appellants; that on August 7, 1951, the engineer of the U. S. Bureau of Public Roads, who could not be present at the final inspection on May 22, 1951, inspected the entire job and approved the same, and; that the wreck which caused appellees' injuries occurred on October 27, 1951.

Appellants make the contention that, under the above undisputed facts, they cannot be held liable for damages, and, in support cite *Memphis Asphalt and Paving Company* v. *Fleming,* 96 Ark. 442, 132 S. W. 222. In that case appellant under contract with a city improvement district constructed a sidewalk along the side of a street and across a branch but did not construct any guard rail or barrier where it extended over the branch, nor was any required by the contract. Appellee was injured by falling from the sidewalk into the branch and the negligence alleged was the failure to construct a guard rail. Appellant's contention was that "it had paved the street and constructed the sidewalk in accordance with the contract and that the work was completed and accepted before the injury occurred." The court said:

"The proof shows that the street had been paved and the sidewalk constructed in accordance with the contract plans and specifications, and that it had been in fact and formally accepted by the engineer in charge of the district on September 2, and thrown open to the use of the public, and that plaintiff's injury occurred three days thereafter, and that later the city accepted the improvement of the entire district on October 6 or 7, without any change in the work on this sidewalk. The asphalt company's contract was with the improvement district, not the city.

"The general rule is that after the contractor has turned the work over and it has been accepted by the proprietor, the contractor incurs no further liability to third parties by reason of the condition of the work, but the responsibility, if any, for maintaining or using it in its *defective* condition is shifted to the proprietor." (Emphasis supplied.)

The contract which appellants here had with the State Highway Department was not introduced in the record, but there is no contention on the part of appellees that appellants did not construct the extension slab and extension shoulder in accordance with the provisions of the contract, except in one instance which we discuss later, recognizing, of course, appellees contend the con-

struction was done in a negligent manner. It was stated by one of appellants' witnesses that the contract called for dirt to be used in making the fills, whereas the evidence shows the fills were made with a sand and gravel mixture known as s-5. However, the undisputed proof shows that this change was first discussed with and sanctioned by representatives of the State Highway Department, and, as so changed, was finally accepted. The unescapable conclusion therefore is that the contract between the appellants and the State Highway Department was changed in this regard by mutual consent. So it must be said here as was said in the *Memphis Asphalt* case, *supra,* that the extension slab and extension shoulder were "constructed in accordance with the contract plans and specifications, and that it had been in fact and formally accepted. . . ." Although the opinion in the cited case mentions no evidence of negligence on the part of the contractor the general rule stated by the court as copied above leads us to conclude that the same result would have been reached if evidence of negligence had been introduced, unless such negligence had come within the classifications later mentioned.

Appellees strongly insist that appellants were negligent in this instance in using s-5 gravel instead of dirt and in not properly tamping the material used in backfilling and in building the extension shoulder. However, even if it be conceded that the record shows substantial evidence of such negligence, appellants cannot be held liable under the holding announced in the case of *Canal Construction Company* v. *Clem,* 163 Ark. 416, 260 S. W. 442, 41 A. L. R. 4. In that case Clem, in the trial court, recovered damages against the construction company on account of an injury received while crossing a bridge over a public highway, which injury it was alleged was caused by appellant's negligence in the construction of the bridge. Notwithstanding the proof was ample to show negligence on the part of the construction company in leaving the flooring of the bridge un-nailed, this court reversed the trial court and dismissed the cause of action announcing this rule:

"The general rule is well established that an independent contractor is not liable for injuries to a third person occurring after the contractor has completed the work and turned it over to the owner and the same has been accepted by him, though the injury resulted from the contractor's failure to properly carry out his contract."

It is our best judgment that the facts in the case under consideration place it squarely within the general rule announced in the above-mentioned decisions.

There are, however, some exceptions to this general rule, under which exceptions a contractor may be held liable even though there has been an approval and acceptance of the completed job. One of the exceptions noted in the *Memphis Asphalt* case, *supra*, is where the job is "turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons." An exception to the general rule is also noted in the *Canal Construction Company* case, *supra*. The courts and authorities in general recognize at least two exceptions to the general rule upon which appellees here rely, namely: (a) Where a defect in construction caused by the negligence of the contractor is so concealed that it could not reasonably be detected on inspection by the proprietor, and; (b) Where the job is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons. We shall now discuss these exceptions as they relate to the evidence introduced in this case.

(a) Were the defects, if any, concealed from the State? Appellees contend that dirt should have been used instead of sand and gravel, that appellants should have used an air hammer instead of using heavy trucks or vehicles with pneumatic tires for compaction, and that appellants were negligent in not doing so. Again conceding for the present that appellees are right in this contention, yet it cannot reasonably be said that this situation was in any way concealed from the State Highway Department. The undisputed facts are that officials of the State Highway Department were present when all

this work was being done, that they not only knew how it was being done but actually directed what materials to use, and that they approved and accepted the work with full knowledge.

Mr. M. O. Thornton, the resident engineer with the State Highway Department in charge of this job, testified: "Q. Did they perform that and every phase of that work under your direct supervision? A. Yes sir, that's right." When Thornton was asked about the last work done on shoulder he stated: "A. On May 5, Saturday morning, the trenches were filled or what we refer to as backfilling, the edges of the pavement with gravel on both sides of the road, both sides of the pavement. Q. Were you present when that was done? A. I was."

(b) We cannot agree with appellee's contention that the contractors here turned over the job to the State and Federal authorities in such a condition that it was imminently dangerous to persons who might later use the highway.

The job here was completed on May 5, 1951, and the accident occurred on October 27, 1951. In the meantime approximately 200,000 cars had used the highway. Of course, not all but many of the cars must have gone over this slab and shoulder, because there were ruts in the shoulder when the accident happened and there must have been ruts before that because the shoulder had been reconditioned practically every week by the maintenance department of the State. There is, of course, no contention that any hole or rut was left when the job was completed. If the best possible judgment was not used in the selection of material and method of compaction it was not the misjudgment of appellants but of the State Highway Department. Again, in speaking of the final phases of the work, Thornton testified:

"Q. Who selected and passed on the material that went into that hole or trench there at the end of the bridge?

"A. I did.

"Q. What kind of material was used there with reference to whether it was sand or gravel?

"A. It was sandy gravel.

"Q. Why did you require the contractor to put gravel there, if you did?

"A. I consulted with my superior, the assistant construction engineer, Mr. E. E. Hurley, as to which would possibly be more advisable and the best construction and he concurred with me that it would be better to backfill that widening strip with gravel than with the sandy loam soil, that it possibly wouldn't scour quite as much and that we could get equal compaction which in the event that traffic should go off, it would be a little better to be on a gravel surface than on soil, and we did that."

When Thornton was asked about the method of compaction he stated:

"A. Placing and rolling of backfill material in a close place with a motor patrol pneumatic tire operation is considered better than with the steel rollers or steel equipment."

Black's Law Dictionary, Fourth Edition, describes "Imminent" as: "Near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; perilous." The case of *Jaroniec v. Hasselbarth,* (N. Y.) 228 N. Y. S. 302, in discussing a manufactured article which was alleged to be "imminently dangerous," quoted with approval the following language:

"There must be knowledge of a danger, not merely possible but probable. It is possible to use most anything in a way that will make it dangerous. That is not enough to charge the manufacturer with a duty independent with his contract."

Under the facts and circumstances disclosed by the entire record here it would be, in our judgment, most un-

reasonable to hold that appellants, as contractors, by their negligence created an imminently dangerous situation which caused appellees' injuries and the death of Mrs. Manley. The effects of such a holding are so obvious and so far-reaching as to compel caution. Road construction contractors, under such holding, would be subjected to potential liabilities so great as to deter them from undertaking such work, or it would force them to demand such exorbitant prices as to make further road construction impossible, and it is not apparent at what point of time such liability would cease. When appellants here undertook and performed this contract job they could reasonably expect that the shoulder would have to be repaired from time to time and that this would be done by the maintenance division of the State Highway Department. This was in fact done. Not only did the State recondition this shoulder practically every week during the five months previous to the accident but it actually did a major repair job only a few days before the accident. It is obvious therefore that the condition which caused the accident was not the condition which existed when appellants finished the job or when the job was approved and accepted.

It is in regard to some of the features of this case mentioned above that distinguishes it from many of the cases relied on by appellees for a reversal, and in particular the case of *Southern Express Company* v. *Texarkana Water Company*, 54 Ark. 131, 15 S. W. 361, which case was recognized as an exception to the general rule in the *Canal Construction* case, *supra*. In the *Southern Express* case, *supra,* the water company dug a trench in the public street and improperly refilled it in such a way that rains caused the filling material to wash or settle. As a result appellant's horse fell or stepped into the sunken portion and was injured. The effect of the opinion appears to be that the water company's negligence was the proximate cause of the injury, though the court said such "negligence was the proximate cause of the defect in the street. . . ." It was further stated by the court that it was the duty of the water company to anticipate and provide for the material effect of rains

upon earth excavated and repaired. The court also said: "If guilty of no negligence in the performance of its duty to replace the street in the condition in which it found it, the defendant would not be liable for a dangerous condition subsequently occasioned by natural causes."

The opinion in the *Southern Express* case, *supra,* is short and does not discuss the question from the standpoint of imminent danger as an exception to the general rule, yet it apparently rests on that basis as was recognized in the *Canal Construction* case, *supra.* As we view the opinion it does not apply to and is distinguishable from the case under consideration. First, there was no contract between the water company and the city, and so there was no inspection and acceptance by the city. Second, it was not unreasonable for the water company to anticipate that rain would cause the dirt to sink if it was not properly packed and there appears to be no contention that it was. Here it is admitted by appellants that a road shoulder, whether constructed with dirt or s-5 gravel, will be affected by rain and traffic, but they also had a right to expect, as before stated, the State would keep it in a safe condition for use by the traveling public notwithstanding rain and traffic. There is also a third and vital distinction between the two cases. As before noted, the court in the *Southern Express* case, *supra,* stated that the company's negligence was the proximate cause of the defect. Although the court's opinion does not so state, it apparently based its conclusion as to proximate cause on the absence of proof that the ditch had been refilled by the city, but that it was in the same condition as it was left by the water company. Such of course is not the situation here. We, therefore, cannot agree that the opinion in the *Southern Express* case, *supra,* is authority for holding here that the alleged negligence of appellants, even if any is shown, was the proximate cause of the rut in the extension shoulder which, it is conceded, was made by heavy traffic months after they had finished the job and after the State Highway Department had inspected and accepted the work and had assumed full responsibility for keeping it in repair.

Appellees cite many other cases but none of them are relied on to the extent that the *Southern Express* case, *supra,* is relied on, and it would serve no useful purpose to discuss them. We have carefully examined each cited case and find that they either do not apply to the facts here or can be distinguished on facts or principles of law from the *Memphis Asphalt* case, *supra,* and the *Canal Construction* case, *supra.*

For the reasons stated above the judgment of the trial court is reversed and the cause of action, appearing to have been fully developed, is dismissed.

Justices McFADDIN and MILLWEE dissent.