Susan SPROLES, Special Administratrix of the
Estate of Ralph Lynn Sproles, Deceased
*v.* ASSOCIATED BRIGHAM CONTRACTORS, INC.

94-185                                        889 S.W.2d 740

Supreme Court of Arkansas
Opinion delivered December 19, 1994

*Tom Thompson* and *H. David Blair*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Kenny McCulloch*, for appellees.

STEELE HAYS, Justice. Lynn Sproles brought this action against Nucor-Yamato Steel Company (NYS) and Associated Brigham Contractors, Inc. (ABC) for personal injuries suffered when he fell from an elevated platform at a steel mill operated by NYS. Sproles later died of unrelated causes while this appeal was pending and Susan Sproles was duly substituted as special administratrix of the estate of Lynn Sproles, deceased.

Around June 1, 1991, Lynn Sproles was employed by West Tennessee Maintenance Services, Inc. (WTM) as a pipe fitter and welder. WTM had contracted with NYS to perform structural modifications at the NYS mill. On June 11, Sproles and other employees of WTM were taking measurements as they worked on the elevated platform. The platform was welded to the struc-

ture of the plant approximately thirty-four feet above the mill floor. Its purpose was to provide access to a valve station. The platform was constructed of structural steel and measured 6' 6" by 10' 9". It was guarded by a yellow perimeter fence. In a corner of the platform was an unguarded opening measuring 2' 4" by 3'.

The platform was constructed between February and May of 1988 by appellee ABC pursuant to a contract with NYS. The platform had been installed at a different location, but about ten days before Sproles's injury it was moved by WTM from its original location and welded to the plant wall at its current location.

As originally installed, the platform was equipped with a ladder extending from the plant floor through and above the opening in the platform. The ladder rose above the platform floor by some four feet and provided access to and from the platform. The ladder was surrounded by a metal cage from the floor of the plant to the floor of the platform. When WTM relocated the platform, the ladder and cage were not reinstalled, evidently because some equipment needed for such installation was not then available. In the absence of the ladder, workmen gained access to the platform by a "JLG" lift or bucket.

On the day in question Sproles had been on the platform earlier and was there a second time helping other WTM employees take measurements for the piping they were to install. Sproles stated that he was going back to the lift to return to the ground. He had unhooked the lanyard of his safety belt and backed into the hole, falling to the floor below.

Sproles filed suit against NYS and ABC alleging that the negligence of NYS and ABC proximately caused the injuries he sustained. The complaint also alleged that ABC was strictly liable as the supplier of a product in a defective condition rendering it unreasonably dangerous.

Sproles settled with NYS and ABC moved for summary judgment in reliance on the pleadings, exhibits, photographs, affidavits and depositions, asserting that there were no genuine issues of material fact and ABC was entitled to judgment as a matter of law. ABC argued the accepted work doctrine, intervening proximate cause, and that Sproles's negligence was greater than ABC's as a matter of law. In response, Sproles moved to deny

summary judgment, incorporating all pleadings, motions, exhibits previously filed and the affidavit of M.I. Starns, an expert in the design and construction of steel mills and industrial plants.

The trial court considered the matters submitted and concluded that no factual dispute existed with respect to NYS having accepted the platform constructed by ABC, and that under the accepted work doctrine ABC could not be liable for injuries to third persons. Sproles argues on appeal that the accepted work doctrine should be abandoned and that it has no application to strict liability imposed on suppliers of defective products under Ark. Code Ann. § 4-86-102 (Repl. 1991). We affirm the trial court.

I

*Accepted Work Doctrine*

Appellant concedes that extending back over many years this Court has recognized and upheld the accepted work doctrine. The general rule is stated in *Canal Construction Co.* v. *Clem*, 163 Ark. 416, 260 S.W. 442 (1924):

> Subject to some qualifications, among them the cases where the work is a nuisance *per se*, or where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons, the general rule is that, after the contractor has turned the work over and it has been accepted by the proprietor, the contractor incurs no further liability to third parties, by reason of the condition of the work; but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor. The contractor remains liable, if at all, only to the proprietor for a breach of his contract.

We have applied the doctrine in numerous cases: *Milam* v. *Midland Corporation*, 282 Ark. 15, 665 S.W.2d 284 (1984); *DeVazier* v. *Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W.2d 610 (1974); *Southwestern Bell Telephone Co.* v. *Travelers Indemnity Co.*, 252 Ark. 400, 479 S.W.2d 232 (1972); *Chesser* v. *King*, 244 Ark. 1211, 428 S.W.2d 633 (1968); *Reynolds* v. *Manley*, 223 Ark. 314, 265 S.W.2d 714 (1954); *Memphis Asphalt and Paving Company* v. *Fleming*, 96 Ark. 442, 132 S.W. 222 (1910).

Appellant does not dispute the fact that NYS had accepted the work of ABC. Rather, it is her contention that the doctrine itself cannot withstand critical analysis and should be excised. She maintains the concept of privity of contract is the theoretical basis for the doctrine, which has become virtually extinct in American jurisprudence, citing *Chapman Chemical Co.* v. *Taylor*, 215 Ark. 630, 220 S.W.2d 820 (1949). Appellant undergirds the argument for abandonment of the accepted work doctrine with forceful authority: *Restatement of Torts (Second)* § 385; W. Keeton, et al, *Prosser & Keeton on Torts* § 104A (5th ed. 1984); *McDonough* v. *Whalen*, 365 Mass. 506, 313 N.E.2d 435 (1974); *Johnson* v. *Oman Construction Co.*, 519 S.W.2d 782 (Tenn. 1975); *Kistrek* v. *Catron*, 644 P.2d 480 (Kan. 1982); *Nichol* v. *Corntassel*, 852 P.2d 583 (Mont. 1993).

Appellant has made an impressive argument for reexamining the accepted work doctrine which we will do, without preconception, when the occasion arises, though we wish no inferences to be drawn from this assertion. However, for reasons to be explained, we are not persuaded that this is the case in which to overturn our many precedents applying the accepted work doctrine and we believe the trial court held correctly.

Several factors influence our conclusion. First, this platform was constructed by ABC over three years before Sproles's injuries. Second, it was constructed by ABC according to the directions and instructions of NYS.[1] Third, the platform was approved and accepted by NYS upon completion and ABC had no further involvement with it. Fourth, on or about June 1, 1991, the platform was detached from its original location by Sproles's employer, WTM, and moved to another location in the mill and reattached to the structure of the plant without any involvement by ABC. Fifth, when the platform was relocated, the ladder and cage appendages were removed and were not reassembled at the new location. Sixth, the opening in the platform had been called to Sproles's attention and he had been specifically instructed to cover it before working on the platform.[2]

---

[1] Mr. Norman L. Maero, construction manager at NYS, testified that ABC constructed the platform according to the directions of NYS. Record, p. 35. That statement was unchallenged.

[1] Record, pp. 64, 67, 82.

Sproles acknowledged that the opening was pointed out to him and that if the hole should have been covered it would have been his responsibility as foreman of the work crew to see that it was done. He explained that he had disconnected his safety belt to leave the platform and simply backed into the opening.

■ In short, this structure had been built by ABC three years before the incident, approved and accepted by NYS, utilized by NYS and others, including the personnel of WTM and, finally, removed and reinstalled in an altered form by WTM, Sproles's employer. We believe the acceptance of the work by NYS under the circumstances of this case relieves ABC of liability, if any existed, as a matter of law.

## II

### *Strict Liability*

Appellant's second assignment of error involves the Arkansas Product Liability Act of 1979, encoded at Ark. Code Ann. § 4-86-101–104 (Repl. 1991). Appellant argues that the platform was supplied in a defective condition which rendered it unreasonably dangerous within the meaning of the act. We disagree, because it is clear that ABC was not a supplier "engaged in the business of manufacturing assembling, selling, leasing or otherwise distributing the product[.]"

■ The unchallenged testimony was that ABC was not engaged in the business of manufacturing a product as contemplated by the act. The proof was that ABC was a contractor, primarily specializing in concrete. It was not engaged in the business of manufacturing platforms. It had contracted with NYS to perform concrete, plumbing and pipe fitting services at the NYS mill. True, it constructed one or more (we are not told how many) platforms for NYS in 1988, but that was a departure from its regular business activity. More important, the platforms were constructed according to the plans and directions of NYS from materials supplied by NYS, on the premises of NYS and ABC's contribution to the project was merely providing labor. ABC has had no involvement with the platforms since their completion in 1988. In short, in the circumstances here presented, ABC was not a supplier engaged in the business of manufacturing a product within the meaning of the Arkansas Product Liability Act.

The case is analogous to *Milam* v. *Midland Corp.*, 282 Ark. 15, 665 S.W.2d 284 (1984) in two respects. There we affirmed summary judgment granted to a developer of a residential subdivision, Midland Corporation. The appellant had asserted causes of action for negligence and strict liability, alleging that Midland had made a street too narrow and a curve too sharp. We held that a developer is not engaged in the business of manufacturing, assembling, selling, leasing or distributing streets. The opinion also noted the absence of proximate cause, in that the plaintiff, Milam, could easily have averted a collision with an oncoming vehicle simply by being attentive.

For the reasons stated, the order of summary judgment is affirmed.

DUDLEY, J., dissents.

ROBERT H. DUDLEY, Justice, dissenting. Ralph Sproles, a construction worker, was working on an aerial platform at the Nucor-Yamato Steel mill in Armorel and, while moving backwards in the close quarters of the aerial platform, fell through a 2' 4" by 3' unguarded opening in the floor of the platform. He fell thirty-four feet to the floor of the mill and was severely injured. The aerial platform was manufactured and supplied by Associated Brigham Contractors. Sproles filed suit against both Nucor-Yamato and Associated Brigham Contractors, but settled with Nucor-Yamato. This appeal involves Sproles' claim against Associated Brigham Contractors.

Sproles' complaint contains two counts against Associated Brigham Contractors, the first count being in ordinary negligence and the second being for strict liability under the product liability statute. The first count alleges the aerial platform was negligently manufactured and constructed by Associated Brigham Contractors. The second count alleges that the platform was supplied by Associated Brigham Contractors in a defective condition which resulted in the accident. *See* Ark. Code Ann. § 4-86-102 (Repl. 1991). Associated Brigham Contractors filed an answer in which it affirmatively pleaded that the accident and resulting injuries were solely caused by the fault of Sproles. Associated Brigham Contractors subsequently filed a motion in which it alleged that it was entitled to a summary judgment on four grounds: (1) Nucor-Yamato accepted Associated's work; (2) there

was an intervening proximate cause; (3) strict liability is inapplicable as a matter of law; and (4) Sproles' negligence was greater than that of Associated Brigham Contractors. Affidavits and depositions were attached to the motion.

The trial court concluded that there was no factual dispute as to whether Nucor-Yamato accepted the platform constructed by Associated Brigham Contractors and that under the accepted work doctrine. Associated Brigham Contractors could not be liable for Sproles' injury. The trial court granted the motion for summary judgment on both counts because of the accepted work doctrine. Sproles died, and his wife was substituted as special administratrix of his estate to pursue the claim. Sproles' estate appeals and asks us to overturn our cases embracing the accepted work doctrine because it is based upon the privity of contract doctrine and because a privity requirement no longer has any logical application in the law of torts. The majority opinion does not directly decide the issue submitted on appeal, but rather affirms the summary judgment on the ordinary negligence count by leaving the accepted work doctrine intact and stating: "Irrespective of privity, we believe the acceptance of the work by NYS under the circumstances of this case relieve ABC of liability, if any existed, as a matter of law." The majority opinion affirms the summary judgment on count two, the strict liability count, on the basis that Associated Brigham Contractors was not a supplier engaged in the business of manufacturing, assembling, selling or otherwise distributing the product. I dissent from both holdings.

## I.

### Accepted Work Doctrine

#### A.

##### Law

The accepted work doctrine is a common law doctrine that provides acceptance by the owner of work done by a contractor terminates any liability of the contractor to third parties for injuries due to the defective condition of the work. This court adopted the doctrine in *Memphis Asphalt & Paving Co.* v. *Fleming*, 96 Ark. 442, 132 S.W. 222 (1910). The theoretical basis for

the rule was stated in *Canal Construction Co.* v. *Clem*, 163 Ark. 416, 260 S.W. 442 (1924):

> [T]he general rule is that, after the contractor has turned the work over and it has been accepted by the proprietor, the contractor incurs no further liability to third parties by reason of the condition of the work; but the responsibility, if any, for maintaining or using it is its defective condition is shifted to the proprietor. The contractor remains liable, if at all, only to the proprietor for breach of contract.

*Id.* at 420, 260 S.W. at 443.

It is apparent that the basis of the rule is the concept of privity of contract, as has been recognized by practically all the writers of learned treatises on the subject. *See, e.g.*, W. Page Keeton et. al., *Prosser & Keaton on The Law of Torts* § 104A (5th ed. 1984); 3 Fowler V. Harper, Fleming James, Jr. et. al., *The Law of Torts* § 18.5 (2d ed. 1986); *Restatement (Second) of Torts* § 385 (1965); William L. Prosser, *The Assault upon the Citadel* (Strict Liability to the Consumer), 69 Yale L. J. 1099 (1960).

This court adopted the accepted work doctrine in 1910, in the case of *Memphis Asphalt & Paving Co.* v. *Fleming*. Six years later the landmark decision of *MacPherson* v. *Buick Motor Co.*, 111 N.E. 1050 (N.Y. 1916) was handed down. That case repudiated the privity requirement in negligence cases, at least regarding manufacturers of chattels. In *Chapman Chemical Co.* v. *Taylor*, 215 Ark. 630, 222 S.W.2d 820 (1949), we unequivocally repudiated the privity doctrine in tort cases. There, we wrote:

> It is said there was no privity of contract between the chemical company and cross-appellants. The showing was at one time, and for some time considered necessary to occasion liability, the line of decisions to that effect going back to the early English case of *Winterbottom* v. *Wright*, 10 Mees & W. 109, 152 Eng. Reprint 402, decided in 1842. But the courts have been getting away from that doctrine and many have entirely repudiated it and discarded it. The opinion of Justice Cardozo, then a member of the Court of Appeals of New York, and later an Associate Justice of the United States Supreme Court in the case of *Macpher-*

*son* v. *Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann. Cas. 1916C, 446, is credited with the inception of the modern doctrine of manufacturer's liability based upon foreseeability rather than privity of contract.

> The Supreme Court of Mass. in the case of *Carter* v. *Yardley*, 64 N.W.2d 693, annotated in 164 A.L.R. 559, expressly repudiates the privity contract rule and stated that the MacPherson case, supra, was now generally accepted and the summary of the Mass. case and others there cited in that "The question in each case was whether the danger was sufficient to require the manufacturer to guard against it." In other words, that foreseeability and not privity was the proper test. *See, also*, § 824, Chapter on Sales, 46 Am. Jur. p. 946.

*Id.* at 641, 222, S.W.2d at 825-26.

For the same reason, practically all other jurisdictions rejected the accepted work doctrine after they adopted the reasoning of *MacPherson*. Well-reasoned exemplars are *McDonough* v. *Whalen*, 313 N.E.2d 435 (Mass. 1974) and *Johnson* v. *Oman Construction Co.*, 519 S.W.2d 782 (Tenn. 1975).

The accepted work doctrine is inconsistent with the tort concept of foreseeability. It is an anachronism that has been perpetuated long after its theoretical base was eroded by the doctrine of foreseeability. We should reexamine our common law acceptance of the work doctrine, and overrule our out-of-date cases, to provide that a contractor should be liable for injuries caused by his negligence to persons with whom he has no contractual relationship even though his work is completed and accepted by the owner before the injury occurs.

Even if the majority opinion is unwilling to modify our common law rule so that we will be in accord with nearly all other jurisdictions, it should recognize that there is a great incongruity between the rule and the special statute of limitations applicable to persons involved in the construction of improvements on real property. In commenting on a statute virtually identical to section 16-56-112(b)(1) of the Arkansas Code Annotated of 1987, the Tennessee Supreme Court wrote:

> There is no indication in these statutes of limitations that building subcontractors or craftsmen are automatically to be discharged from liability to injured claimants simply because of the completion and acceptance of the work. Instead, claimants are allowed four years after substantial completion of such improvements in which to file actions, under the circumstances delineated in these statutory provisions.

*Johnson*, 519 S.W. 2d at 788.

Our General Assembly has even more clearly expressed today's public policy on privity in tort cases. Section 4-86-101 provides:

> The lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages . . . for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to . . . be affected by the goods.

Ark. Code Ann. § 4-86-101 (Repl. 1991).

Although the foregoing statute is cited by Sproles in his brief, the majority opinion omits any discussion of it. The meaning of the statute is without doubt. Superimposing the accepted work doctrine on top of it is nothing less than a partial judicial repeal of a statute.

### B.

### Facts

The majority opinion states that this is not "the case in which to overturn our many precedents applying the accepted work doctrine" because of facts set out in the majority opinion. The majority opinion then finds some of those facts for the first time on appeal. Such a factual finding by an appellate court is contrary to established precedent and irrational for the review of a grant of summary judgment. Equally difficult to understand is that some of those facts are in dispute.

This case is on appeal to this court to review the circuit

court's grant of summary judgment on the ground of the accepted work precedent. The trial court made only those findings necessary to apply the accepted work doctrine. The trial court's only findings of fact are:

3. The accepted work doctrine applies to this case as the Arkansas Supreme Court has held that once there has been a practical acceptance by a proprietor of an independent contractor's work, the contractor is no longer liable for injuries to third persons. Based upon the record before the Court, there is no factual dispute about the fact that practical acceptance of ABC's work on the platform has been made by Nucor, the owner or proprietor, and ABC, with an independent contractor working at Nucor's plant.

4. The accepted work doctrine applies not only to plaintiff's negligence claims against ABC, but also plaintiff's product liability claims.

5. The Court finds that the "Imminent Danger" exception does not apply in this case, as the platform had been accepted by Nucor and had been in use for approximately three (3) years before plaintiff's fall on June 11, 1991. Shortly before plaintiff's fall, the platform had been disassembled by plaintiff's employer, moved and reinstalled a different location. This was done at the direction of Nucor. The period of time of approximately three years between the time that the work on the platform was completed by ABC and the date of plaintiff's injury, would preclude the "Imminent Danger" exception from being applicable.

6. The Summary Judgment applies to all claims of plaintiff against ABC, but does not address the cross-claim of Nucor against ABC.

The majority opinion additionally finds that Associated Brigham Contractors constructed the elevated platform "according to the directions and instructions" of Nucor-Yamato. Even if Nucor-Yamato had instructed Associated Brigham Contractors to negligently manufacture the elevated platform, it would not relieve Associated Brigham Contractors from liability, but that is an aside because the facts relied on in the majority opinion are found for the first time in the majority opinion. While an employee

of Associated Brigham Contractors, Jerry Schultz, testified that Associated Brigham Contractors built the platforms at the direction of Nucor-Yamato, Nucor-Yamato's employees never admitted that the platforms were built upon its specifications or instructions. Nucor-Yamato's employees only admitted that Nucor-Yamato employed Associated Brigham Contractors to build the elevated platforms and that OSHA requirements were not to be violated. They never admitted that they gave detailed instructions or specifications that the platforms be built without a guard or cover on the elevated platform. The fact is in sharp dispute.

The majority opinion also makes a finding of fact for the first time that the ladder and cages were removed by Nucor-Yamato and implies that action constituted a substantial alteration. The finding ignores the testimony of Sproles' expert witness on the fabrication of elevated work platforms. His testimony is abstracted in part as follows:

> In my opinion, the absence of the ladder was not a factor in Mr. Sproles' injury. The ladder, had it been installed, would have provided no guarding of the opening in the platform surface, nor would the steel rod cage around the ladder, below the floor surface, had provided any type of guarding of the opening or any meaningful protection to a person falling through the floor opening. The construction of the cage around the ladder is such that a person falling through it could have caught his head or neck on the tubing and could have caused a fatal injury.
>
> It is my opinion that the work platform, as originally constructed and as it existed at the time of Mr. Sproles' injury, did not conform to minimum accepted safety practices for workplace safety. In accordance with safety standards commonly recognized in the construction industry or those responsible for workplace safety. The opening in the surface of the work platform should have been protected by either a door or covering over the hole, installed on a four inch high vertical base around the perimeter of the opening, so as to give a safe walking surface or by a guard rail with a vertical toe plate continuous around the perimeter of the opening. Failure to provide the guarding

of this opening is contrary to accepted standards for work-place safety.

The existence of the unguarded opening is a clear violation of OSHA requirements which require a floor opening of this size, and mounted at this elevation, to be appropriately guarded by an adequate covering or adequate guard rail around the perimeter.

This platform is obviously designed and intended to be used by persons working in connection with the operation or maintenance of the steel mill. Because of the size of the platform and the arrangement of piping, working space is somewhat limited an movement about the platform requires one to climb over and around or crawl under various pipes. As a result to the cramped working space and size of the opening, this platform presents [an] imminent hazard of injury to anyone working on it, which hazard could have been effectively eliminated at a minimal cost by appropriate guardian.

The most far-reaching finding of fact in the majority opinion is that Sproles could clearly see the hole in the platform and should have recognized the danger. The finding constitutes a finding that Sproles was guilty of contributory negligence as matter of law.

Associated Brigham Contractors pleaded contributory negligence as an affirmative defense. It bore the burden of proof on its affirmative defense. ARCP Rule 8(c). Yet, affidavits and depositions submitted to the trial court on the motion for summary judgment show that a finder of fact could rationally conclude that Sproles was not negligent in failing to appreciate his proximity to the unguarded opening as a result of the cramped area in which it was necessary for him to work and because he was moving backwards. Sproles did not admit that his negligence was greater than the others, and the testimony on the issue is also sharply in dispute. The majority opinion does not cite a single instance in which this court has previously evaluated degrees of fault for the first time on appeal. It is wrong to so do.

A summary judgment should only be granted where the record before the trial court shows that there is no genuine issue

of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether a grant of summary judgment is proper, all evidence must be viewed in the light most favorable to the resisting party, and the resisting party is entitled to have all doubts and inferences resolved in his favor. *Tullock* v. *Eck*, 301 Ark. 564, 567, 785 S.W.2d 31, 46 (1993); ARCP Rule 56(c).

A second fallacy in the holding on the ordinary negligence count is that the implied comparison of fault is only between Sproles and Associated Brigham Contractors. The required comparison, however, is the fault of Sproles to that of all "parties from whom the claiming party seeks to recover damages." Ark. Code Ann. § 16-64-122(a) (1987). Thus, Sproles' right of recovery is determined by comparing any fault the jury should assess to him with the total fault of Associated Brigham Contractors and the owner of the premises, Nucor-Yamato Steel Company.

## II.

### Strict Liability

The Arkansas Products Liability Act, in part, provides: "The provisions of subsection (a) [strict liability] of this section apply although the claiming party has not obtained the product from or entered into any contractual relationship with the seller." Ark. Code Ann. § 4-86-102(b) (Repl. 1991).

The trial court ruled: "The accepted work doctrine applies not only to plaintiff's negligence claims against ABC, but also to plaintiff's product liability claims." Sproles makes a direct and straightforward appeal from the ruling that the accepted work doctrine exists even after the strict liability statute was enacted. The majority opinion, even in view of the unequivocal language of the strict liability statute, holds that we will not abandon the accepted work doctrine, even in cases of strict liability. The holding constitutes a judicial repeal of the statute.

The majority opinion additionally holds that Associated Brigham Contractors is entitled to summary judgment because it was not a supplier engaged in the business of manufacturing, assembling, selling or otherwise distributing the product. Yet, the majority opinion admits that Associated Brigham Contractors

"constructed one or more [we are not told how many] platforms for NYS [Nucor-Yamato Steel] in 1988." The holding is irreconcilable with the strict liability statute and the admitted facts. It is admitted that Associated Brigham Contractors manufactured and supplied elevated platforms such as the one involved in Sproles' injury, and it is admitted that Associated Brigham Contractors in fact manufactured and supplied the platform involved in this case. The strict liability statute provides that "a supplier of a product is subject to liability in damages for harm to a person . . . if . . . the product was supplied . . . in a defective condition." Ark. Code Ann. § 4-86-102 (Repl. 1991). It is illogical to affirm the grant of summary judgment on the basis that Associated Brigham Contractors was not a supplier engaged in the business of manufacturing the product when it is admitted that Associated Brigham Contractors both manufactured and supplied the product.

Even so, the majority opinion states that Associated Brigham Contractors was not a "supplier" of the elevated platform within the meaning of the product liability act. The majority opinion does not discuss the meaning of "supplier," and it does not look at the decisions from other jurisdictions to discuss the meaning of the word. Rather, it simply cites *Milam v. Midland Corp.*, 282 Ark. 15, 665 S.W.2d 284 (1984), as authority. In that case, we held that a real estate subdivision developer was not strictly liable for an automobile accident that occurred on a street in the subdivision because a street is not a "product." We did not discuss the meaning of the word "supplier."

A note about the Arkansas Products Liability Act provides:

Section one of Act 111 subjects suppliers of defective products to strict liability for harm their products cause to persons and their property. It is important to note that this act subjects "suppliers" to liability as contrasted with the strict liability rule under the Restatement Second of Torts which by its terms covers only "sellers." By making the act cover "suppliers" the legislature has made it encompass all persons who engage "in the business of manufacturing, assembling, selling, leasing, or otherwise distributing such products." Thus, this act's coverage is much broader than that of section 402A Restatement Second of Torts,

which subjects suppliers, other than sellers, only to the more circumscribed action of negligence.

Michael Greene, Note, *Act 111 of 1973, An Act to Impose Liability for Injury and Damages Done in Certain Circumstances by Defective Products*, 27 Ark. L. Rev. 562, 565 (1974).

The statute means that one who supplies a defective product is liable. *Parker* v. *Seaboard Coastline R.R.*, 573 F.2d 1004 (8th Cir. 1978). The word "supplier" should be given its common and accepted usage, and a dictionary definition of the word is appropriate. All dictionaries define the word to include the platform manufactured and supplied by Associated Brigham Contractors. *See, e.g.*, Webster's International Dictionary 2297 (3d ed 1961).

The majority opinion also provides that the elevated platform is not a "product" within the meaning of the statute. Again, the majority opinion does not discuss the meaning of the word "product," and it does not look at decisions from other jurisdictions that discuss the meaning of the words. The Michigan Court of Appeals, in *Fenton Area Public Schools* v. *Sorensen-Gross Construction Co.*, 335 N.W.2d 221 (Mich. App. 1983), concluded that a "product" is "a thing produced by labor." *Id.* at 224.

Our case of *Blagg* v. *Fred Hunt Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981), is factually closer than the *Milam* case cited in the majority opinion. In *Blagg*, we held that one who built a house was a "supplier" of a "product" as defined in the products liability statute. *Id.* at 190, 612 S.W.2d at 324. If a home is a "product," surely an elevated platform is a product.

The majority opinion also determines for the first time on appeal that Associated Brigham Contractors' primary business was concrete construction. Even so, the fact is immaterial. The Arkansas Product Liability Act provides that a supplier of a product is liable for damages caused by such defective products. Ark. Code Ann. § 4-86-102 (Repl. 1991). Liability does not depend on whether the product was supplied by one whose *principal* business was manufacturing that particular product. *See* Ark. Code Ann. § 4-86-102(a)(1) (Repl. 1991).

The majority opinion states that an additional reason it affirms the grant of summary judgment is because Nucor-Yam-

ato Steel supplied the directions and material to build the elevated platform. This rationalization is antithetical to the products liability statute. Under the statute, it does not matter where or from whom the manufacturer acquired the raw materials, nor does it matter who designed it. Rather, "a supplier of a product is subject to liability" if it manufactured or assembled or supplied the product in a defective condition and that was the proximate cause of a harm. Ark. Code Ann. § 4-86-102 (Repl. 1991).

In support of affirming the grant of summary judgment the majority opinion further states that Associated Brigham Contractors "had no involvement with the platforms since their completion in 1988." The short response is that not even Associated Brigham Contractors claims that the statute of limitations bars the claim.

In summary, the majority opinion affirms the trial court's grant of summary judgment which was based on the accepted work doctrine. The accepted work doctrine is incompatible with current tort law and the statutes of this State. Therefore, I dissent.