Jerri BUSH, Plaintiff–Appellant,

v.

SECO ELECTRIC COMPANY and Jack Satkamp, Defendants–Appellees.

No. 96–2875.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1997.

Decided June 25, 1997.

Nana Quay–Smith (argued), Karl L. Mulvaney, Patrick A. Elward, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, for Plaintiff–Appellant.

Dale W. Eikenberry (argued), Wooden & McLaughlin, Indianapolis, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, and CUMMINGS and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

■ The law of Indiana has long held that once an owner accepts a piece of construction work from an independent contractor, the owner takes full responsibility for it. *Daugherty v. Herzog*, 145 Ind. 255, 44 N.E. 457 (1896). The contractor's duty of care to a third party for personal injury thereby ceases, for the contractor and the third party are not in privity. *Holland Furnace Co. v. Nauracaj*, 105 Ind.App. 574, 14 N.E.2d 339 (1938). And with the contractor's duty goes its liability as well. *Citizens Gas & Coke Util. v. American Economy Ins. Co.*, 486 N.E.2d 998, 1000 (Ind.1985). In embracing this "acceptance rule," Indiana has not been alone. In the related area of warranties in sales of personal property, American courts many years ago shed a requirement of privity between injured parties and manufacturers. *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916) (Cardozo, J.); Prosser & Keeton, *The Law of Torts* § 96 (5th ed.1984). But, in the world of construction contracts, courts have been much slower to relax the privity strictures of the nineteenth-century common law. *See, e.g., Pierce v. ALSC Architects*, 270 Mont. 97, 890 P.2d 1254, 1262 (1995) (overturning acceptance rule); *Johnson v. Oman Construction Co., Inc.*, 519 S.W.2d 782, 788 (Tenn.1975) (same); *McDonough v. Whalen*, 365 Mass. 506, 313 N.E.2d 435, 438–439 (1974) (same). *But see Sproles v. Associated Brigham Contractors*, 319 Ark. 94, 889 S.W.2d 740 (1994) (upholding acceptance rule); *Nelson v. L & J Press Corp.*, 65 Wis.2d 770, 777 n. 4, 223 N.W.2d 607, 611 n. 4 (1975) (same).

Defendants SECO Electric Company and Jack Satkamp (collectively SECO) argue that the acceptance rule remains potent in Indiana and that it blocks any liability to plaintiff Jerri Bush. Bush was a temporary employee at an Indianapolis recycling plant owned by Rumpke Recycling, Inc. (Rumpke). The plant recycled aluminum cans; Bush's main job was "densifying" the cans inside the plant building. Delivery trucks would drop cans into a deep pit, and a giant conveyor contraption would pick them up and deposit them in a hopper. (Rumpke had hired SECO to install the wiring of the conveyor.) The conveyor sometimes failed to gather all the aluminum cans, which then needed to be cleaned up. The proper way to do this was to go down into the pit, pick the cans up, dump them in big garbage bins and haul the bins out. The safety protocol called for shutting off the conveyor with controls located outside the pit. A yellow safety guard was supposed to be fitted on the conveyor's mouth, making it impossible to feed cans into the conveyor. There was no emergency shut-off button actually in the pit.

Bush was picked to go clean the pit. Bush says she knew nothing of the safety protocol, and it was her first day on pit duty. She began shoveling cans onto the conveyor while it was still running. The safety guard was not on, apparently taken off to be cleaned or repaired. The conveyor snagged her clothes and Bush lost her arm.

Bush sued, asserting liability under negligence and product liability theories. SECO's co-defendant was Wymer Construction Com-

pany (Wymer), which had installed the conveyor (and which was later dismissed from the suit by stipulation). At the behest of Wymer, Bush's suit was removed to federal district court under the diversity jurisdiction. 28 U.S.C. § 1332.

SECO moved for summary judgment, raising the acceptance rule as its defense. That Rumpke had accepted the wiring job was not in dispute: the conveyor had been operating for four weeks when Bush was injured, and Rumpke's control over the conveyor was beyond doubt. Bush argued that the acceptance rule did not defeat her action, because she fitted into a narrow "humanitarian" exception. *Citizens Gas*, 486 N.E.2d at 1000–01. Under this exception, lack of privity could be overlooked if a contractor produced "a product or work in a condition that was dangerously defective, inherently dangerous or imminently dangerous such that it created a risk of imminent personal injury"—but mere negligence would not suffice. *Citizens Gas*, 486 N.E.2d at 1000 (citing exception created in *Holland Furnace Co.*, 14 N.E.2d at 342). The absence of an emergency stop-button in the pit itself constituted such a condition, Bush argued. The district court thought not. Because SECO therefore owed no duty of care to Bush, the district court granted summary judgment to SECO. Bush appeals. (The district court also granted summary judgment on Bush's product liability theory, but Bush does not pursue that claim.)

While this appeal was awaiting oral argument, the Indiana Supreme Court in *Blake v. Calumet Construction Corp.*, 674 N.E.2d 167 (Ind.1996), recast the acceptance rule. In her briefs before this court, Bush forecast that the Indiana Supreme Court would overrule the privity-based acceptance rule for personal injuries in favor of a negligence standard rooted in foreseeability. In this, Bush was disappointed: the acceptance rule survives in Indiana. *Id.* at 173.

Yet in its explication of the "imminent personal injury" exception upon which Bush relied in the district court, *Blake* may have delivered what Bush seeks. *Blake* is peppered with words like "expectable," "reasonable," and "foreseeable," words alien to the privity analysis of the acceptance rule. In spirit, it seems, *Blake* looks to the granddaddy of negligence cases, *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). *Blake* goes so far as to remark upon the advantages of junking the acceptance rule in favor of a *"Palsgraf*-like foreseeability standard." *Blake*, 674 N.E.2d at 170 n. 1. Such a standard, *Blake* notes, would "obviate[ ] possible confusion caused by terms like 'acceptance' or 'imminently dangerous.'" *Id.* Yet rather than trace this logic to its implicit conclusion, *Blake* in the end declines to set aside the acceptance rule.

So the acceptance rule survives; but in what form? For the humanitarian exception widens enough in *Blake* to reshape the acceptance rule itself. Where a contractor hands over work "in a defective or dangerous state," "important considerations of deterrence and prevention militate in favor of imposing an ongoing duty of care." *Blake*, 674 N.E.2d at 173. And *Blake* grounds this view on a foundation that is positively Palsgrafian: "The possibility of harm from the condition is foreseeable by the contractor." *Id.* The spirit of *Palsgraf* is evident as well in *Blake*'s elaboration of the humanitarian exception. The exception applies to contractors' work that is (1) dangerously defective, (2) inherently dangerous, or (3) imminently dangerous. *Citizens Gas*, 486 N.E.2d at 1000. *Blake* supplies definitions for each. Because the "inherently dangerous" sub-exception best applies to "dangerous activities such as blasting, rather than conditions or instrumentalities" (like SECO's wiring), *Blake*, 674 N.E.2d at 173 n. 7, we quote only the first and third definitions. SECO's wiring would be " 'dangerously defective' if the work is turned over in a condition that has a propensity for causing physical harm to foreseeable third parties using it in reasonably expectable ways." *Id.* at 173 n. 6. Or its work might be " 'imminently dangerous' if it 'is reasonably certain to place life or limb in peril.' " *Id.* at 173 n. 8.

In *Blake*, the defendant contractor had built a loading dock attached to a maintenance building. The contractor had not put up a guardrail. Wrapping up some work in the building, plaintiff Blake took a break mid-evening and exited onto the darkened

loading dock. Stepping off the edge, Blake fell four feet to the concrete below and broke his hip. The trial court invoked the acceptance rule and granted summary judgment to the defendant contractor. The Court of Appeals affirmed. Equipped with the re-visited humanitarian exception, the Indiana Supreme Court decided that Blake should have survived summary judgment. "[T]he lack of a safety device on a darkened construction site," the *Blake* court held, "is enough to present a jury question on the loading dock's status as an imminently dangerous condition." Id. at 173.

The district court decided against Bush under pre-*Blake* law. Whether Bush can surmount summary judgment under current Indiana law is puzzling. Maybe a reasonable jury could conclude that the absence of an emergency stop-button down in the pit was "reasonably certain to place life or limb in peril." *Blake*, 674 N.E.2d at 173 n. 8. We do not know. The acceptance rule has shifted enough to make extrapolating from the district court's decision little more than divination. We believe the district court must take a second look in light of *Blake*. Additional submissions might lead to summary judgment. And, if not, a trial would seem appropriate.

The opinion of the district court is VACATED and this case REMANDED for further proceedings.