Craig SUNESON *v.* HOLLOWAY CONSTRUCTION
COMPANY, APAC-Arkansas, Inc., McClinton-Anchor
Division and Highway Valets, Inc.

98-846                                   992 S.W.2d 79

Supreme Court of Arkansas
Opinion delivered May 27, 1999

*Dewey Moore*, for appellant.

*Friday, Eldredge & Clark*, by: *Donald H. Bacon*, , for appellee Holloway Construction Company.

*Davis, Cox & Wright PLC*, by: *Constance G. Clark* and *Don A. Taylor*, for appellee APAC-Arkansas, Inc., McClinton-Anchor Division.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Overton S. Anderson* and *Scott D. Provencher*, for appellee Highway Valets, Inc.

T OM GLAZE, Justice. This appeal is a tort case involving a legal principle of major impor tance called the "accepted-work doctrine." One of Craig Suneson's points for reversal is that the doctrine is outdated and that this court should repudiate it. Our court has jurisdiction of this appeal under Ark. Sup. Ct. R. 1-2(b)(5).

The facts leading to Suneson's accident and injuries and to the filing of this case are largely undisputed. At approximately 5:40 a.m. on February 24, 1992, Suneson was driving a tractor-trailer north on Highway 71 near Bentonville in heavy fog. He was driving in the outside lane, using the solid white outside line as a guide when he found himself in exit lane 72. Because he

believed he could not return safely to the main highway, Suneson stayed in the exit ramp which was on an incline and curve. His truck overturned, and Suneson suffered a broken neck, rendering him a quadriplegic.

In February 1995, Suneson filed suit against three defendant contractors, Holloway Construction Company (Holloway); APAC-Arkansas, Inc., McClinton-Anchor Division (APAC); and Highway Valets, Inc. (Valets), alleging each of them was negligent in causing latent and hazardous defects at the exit 72 ramp where Suneson's truck overturned.[1] Holloway and APAC each had a contract with the Arkansas Highway and Transportation Department (AHTD) to perform construction work on the exit 72 ramp. Holloway was granted a contract for project R90045 for the grading and structure portion completing Highway 71, and APAC received the contract for project R90071 for the base and surfacing, which included the pavement markings and markers. Holloway also did some surfacing work on exit ramp 72. Valets had a subcontract with APAC to perform certain striping and marking work. Suneson alleged that Holloway negligently failed to construct the exit curve as required by the plans and specifications, that APAC negligently constructed the base and surfacing portion of the exit curve, and that Valets negligently failed to place markings on the roadway at exit 72 as required by the Manual of Uniform Traffic Control Devices (MUTCD). The MUTCD was a part of the contract specifications. Suneson asserted the negligence of these defendant-contractors resulted in defects that proximately caused him not to be placed on notice of the approaching exit and caused him to drive his loaded tractor-trailer into the exit curve.[2]

---

[1] U.S. Fire Insurance Company subsequently filed a complaint in intervention, alleging it had accepted liability for Suneson's injury under its workers' compensation policy. U.S. Fire asserted that it had paid $600,000 in workers' compensation benefits and medical bills, and it was entitled to recover such payments from any money recovered in this suit.

[2] Suneson presumably filed no complaint against the State or AHTD because of the State's sovereign immunity in such matters. *See* ARK. CONST. art. 5, § 20; *see also Austin v. Arkansas State Highway Comm'n*, 320 Ark. 292, 895 S.W.2d 941 (1995).

Valets filed a summary judgment motion asserting that the AHTD had accepted its work prior to Suneson's accident and that under the "accepted-work doctrine," it bore no liability to third parties for the condition of its work once the work was turned over to and accepted by the AHTD. Holloway and APAC joined in Valets' motion. Suneson filed a response, asserting the accepted-work doctrine should be repudiated, but if the doctrine is not overruled, the contractors' work had not been accepted by the AHTD under the terms of the parties' contracts. Suneson further claimed that, even if the accepted-work doctrine was applied, the contractors' work left the exit 72 ramp in a defective condition which was imminently dangerous or contained latent defects — two recognized exceptions to the doctrine.

After a hearing, the trial court granted summary judgment in favor of the contractors, Holloway, APAC, and Valets. Suneson brings this appeal, raising the the same issues he argued at trial. However, if this court agrees with Suneson that the court should abandon the accepted-work doctrine, Suneson's other arguments need not be addressed. Thus, we will first consider whether to repudiate the doctrine.

Suneson initially emphasizes that the doctrine has its roots in an 1842 English case called *Winterbottom v. Wright*, 152 Eng. Rep. 402 (Ex. 1842), wherein a negligent contractor was shielded from liability for a third party's injuries because the contractor and third party were not in privity of contract. Suneson cites an early Connecticut case, *Howard v. Redden*, 93 Conn. 604, 107 A. 509 (1919), as typical of the early cases involving builders or contractors adhering to the *Winterbottom* rationale. In *Howard*, the court adopted a rule of proximate cause, holding that a contractor was not liable to a passerby injured when struck by a faulty cornice built by the contractor. The *Howard* court stated that the plaintiff's injury, which occurred after the contractor had completed the work, was due solely to the owner's failure to inspect and guard against the cornice's deterioration. The Connecticut court noted that although the contractor remained liable through privity after completion and acceptance of the work, the contractor's liability did not extend to third persons. The *Howard* court recog-

nized the following three reasons supporting the accepted-work doctrine:

> (1) The *Winterbottom* decision and its application of the doctrine of privity to cases in negligence;

> (2) The owner alone was in control of the entity when the injury occurred; and

> (3) The presumption that the owner had carefully inspected the work and knew of its defect before accepting. *See also Minton v. Krish*, 34 Conn. App. 361, 642 A.2d 18 (1994).

In 1977, the Connecticut Supreme Court in *Coburn v. Lenox Homes, Inc.*, 173 Conn. 567, 378 A.2d 599 (1977), reversed its earlier *Howard* decision and concluded that a contractor could be liable to an injured third party even though the contractor's negligent work had been completed and the owner had accepted it. In doing so, the Connecticut court recognized the revolution in the law of negligence sparked by *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), and the fact that the *MacPherson* decision marked the demise of the privity-of-contract requirement in products cases and established the rule that a seller of a product is liable for negligence that may foreseeably injure another. *Coburn*, 378 A.2d at 602. The *Coburn* court further implicitly rejected the control theory and the theory of knowledge and acceptance the *Howard* court had previously used when applying the accepted-work rule. *See also Minton*, 642 A.2d at 21.

The *Minton* court, in explaining Connecticut's decisions departing from the accepted-work doctrine, stated as follows:

> In rejecting the "completed and accepted" rule, our courts join the majority of jurisdictions. W. Prosser & W. Keeton, supra, § 104A; annot., 58 A.L.R.2d 891 (1958) (listing jurisdictions that have rejected the rule). We conclude that the "completed and accepted" rule has been repudiated in Connecticut and replaced with the rule of foreseeability as expressed in 2 Restatement (Second), Torts (1965) § 385: "One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been

accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others."

*Minton*, 642 A.2d at 21.

Suneson cites cases from other jurisdictions that have repudiated the accepted-work doctrine. *See Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973); *McDonough v. Whalen*, 313 N.E.2d 435 (Mass. 1974); *Krisovich v. Booth*, 181 Pa. Super. 5, 121 A.2d 890 (1956); *Johnson v. Oman Const. Co.*, 519 S.W.2d 782 (Tenn. 1975); *Strakos v. Gehring*, 360 S.W.2d 787 (Tex. 1962); *see also Thompson v. Coats*, 547 P.2d 92 (Or. 1976); *Hunt v. Blasins*, 384 N.E.2d 368 (Ill. 1979); *Totten v. Gruzen*, 52 N.J. 202, 245 A.2d 1 (1968); *Russell v. Arthur Whitcomb, Inc.*, 121 A.2d 781 (N.H. 1956); *Pierce v. ALSC Architects, P.S.*, 890 P.2d 1254 (Mont. 1995); *Lynch v. Norton Constr. Inc.*, 861 P.2d 1095 (Wyo. 1993); *Hanna v. Fletcher*, 231 F.2d 469 (D.C. Cir. 1956); *Hankins v. Elro Corp.*, 149 Mich. App. 22, 386 N.W.2d 163 (1986); *Pastorelli v. Associated Eng'rs, Inc.*, 176 F.Supp. 159 (D.R.I. 1959); *Kristek v. Catron*, 7 Kan. App.2d 495, 644 P.2d 480 (1982); Annotation, *Negligence of Building or Construction Contractor as Ground of Liability Upon His Part for Injury or Damage to Third Person Occurring After Completion and Acceptance of the Work*, 58 A.L.R.2d 865, 891 (1958 & Supp. 1994 & 1999) (citing cases in other jurisdictions supporting the view that a building or construction contractor is liable for injuries to, or the death of, third persons occurring after the completion of his work and its acceptance by the contractor where the work is reasonably certain to endanger third persons if negligently prepared or constructed). One authoritative treatise states its displeasure with the accepted-work rule in the following way:

> In the case of builders and other contractors in construction work, a rule once prevailed that exonerated the contractor for injuries to third persons caused by defective construction but occurring after the employer had accepted the work. This will be recognized as an offspring of the privity rule and the last-wrongdoer rule. Both lines of holdings represent anachronistic and unwarranted exceptions to general negligence principles and are being progressively repudiated by the courts.

5 Harper, James & Gray, The Law of Torts, § 28.10 (2d ed. 1986) (footnotes omitted).

The Texas Supreme Court, in *Strakos v. Gehring*, abandoned the accepted-work doctrine in 1962 by rejecting the notion that although a contractor is found to have performed negligent work or left the premises in an unsafe condition and such action or negligence is found to be a proximate cause of injury, he must nevertheless be immune from liability solely because his work has been completed and accepted in an unsafe condition. *Strakos*, 360 S.W.2d at 790. The Texas court further indicated that the doctrine is simple but produces a harsh and unsound approach to the problem. It explained its reasons for rejecting the doctrine as follows:

> The retention of the "accepted-work" doctrine would inevitably yield the same unwieldy results as have come about in virtually every other jurisdiction that has formally adhered to the rule. The rule eventually becomes enveloped by complex exceptions to cover such situations as nuisance, hidden danger, and inherently dangerous conditions. The result would be that in each case, after having first decided that there was an acceptance of the work, we would then have to decide issues involving all the various exceptions to the rule and in case any exception were found applicable, the basic issues of negligence and proximate cause would still remain for consideration. We believe that outright rejection of this oft-repudiated and emasculated doctrine would restore both logic and simplicity to the law.

*Strakos*, 360 S.W.2d at 791.

The Montana Supreme Court in *Pierce v. ALSC Architects, P.S.*, 890 P.2d 1254 (Mont. 1995), offered an additional reason for rejecting the doctrine. There, the court held that the doctrine:

> [H]as the undesirable effect of shifting responsibility for negligent acts or omissions from the negligent party to an innocent person who paid for the negligent party's services . . . based on the legal fiction that by accepting a contractor's work, the owner of property fully appreciates the nature of any defect or dangerous condition and assumes responsibility for it.

*Id.* at 1262. The court concluded that in reality the opposite is usually true. Contractors, whether they be building contractors or architects, are hired for their expertise and knowledge. *Id.*

Some states have retained the accepted-work doctrine, but in doing so, they have added exceptions under which a contractor could remain liable after his work is accepted by the owner. *See Easterday v. Masiello,* 518 So.2d 260 (Fla. 1988) (contractors continue to be liable for latent defects); *Bob v. Scruggs Co.,* 204 Ga. App. 375, 419 S.E.2d 100 (1992) (contractor not liable unless work constituted nuisance *per se,* was inherently or intrinsically dangerous, or was so negligently defective as to be imminently dangerous to others); *Blake v. Calumet Constr. Co.,* 674 N.E.2d 167 (Ind. 1996) (contractor remains liable if the work presents imminent injury to third parties); *Gast v. Shell Oil Co.,* 819 S.W.2d 367 (Mo. 1991) (en banc) (while court adheres to doctrine, contractor could still be liable for hidden defects); *Dvorak v. Bunge Corp.,* 256 Neb. 341, 590 N.W.2d 682 (1999) (applying inherently dangerous and latent defect exceptions); *Nelson v. L. & J. Press Corp.,* 223 N.W.2d 607 (Wis. 1974) (the accepted-work rule does not apply where the defect is not readily observable upon reasonable inspection); *Nifong v. C.C. Magnum, Inc.,* 121 N.C. App. 767, 468 S.E.2d 463 (1996) (applying imminently dangerous exception); *Mendez v. Paddock Pool Constr. Co.,* 172 Ariz. 258, 836 P.2d 968 (Ct. App. 1991) (doctrine applies only when the contractor has no discretion and merely follows the plans and specifications provided by its employer). In recognizing those states that have retained the doctrine conditioned upon specified exceptions, it is interesting at this point to note the Wyoming Supreme Court's view on the subject. In *Lynch v. Norton Constr. Co.,* 861 P.2d 1095 (Wyo. 1993), the Wyoming court explained its refusal to adopt the doctrine by pointing out that the "rule of nonliability with its many exceptions is more cumbersome than traditional negligence analysis," as the exceptions to the rule nearly swallow up the rule. *See also* W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 104A (5th ed. 1984) (noting that the exceptions tended to swallow the rule).

■ Arkansas adopted the accepted–work doctrine when this court first applied the doctrine in the 1910 case of *Memphis Asphalt & Paving Co. v. Fleming,* 96 Ark. 442 (1910). There the court stated the general rule that after the contractor has turned the work over to and it has been accepted by the proprietor, the contractor incurs no further liability to third parties by reason of the condition of the work, but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor. *Id.* at 443-44. In *Memphis Asphalt,* the contractor had constructed a sidewalk over a branch in an alley for the City of Little Rock. No guard rails or barriers were erected, and the plaintiff fell off the sidewalk into the branch. The plaintiff then sued and recovered damages in the trial court. On appeal, this court reversed and dismissed the action, holding that the contractor's liability ceased when the sidewalk improvement had been completed by the contractor, accepted by the engineer of the district, and opened to the public. *Id.* at 444; *see also Southwestern Bell Tel. Co. v. Travelers Indem. Co.,* 252 Ark. 400, 479 S.W.2d 232 (1972) (recognizing doctrine).

■ This court has on other occasions recognized the accepted–work doctrine, but in those instances, our court, like the jurisdictions retaining it as set out above, adopted certain exceptions in an attempt to soften the harsh effects of the doctrine. For example, in *Canal Construction Co. v. Clem,* 163 Ark. 416 (1924), the court stated the general rule that where the contractor turns work over to the owner that is a nuisance *per se,* imminently dangerous, or contains hidden or concealed defects, the contractor may be found liable to a third party injured as a result of the work even after the owner accepted it. In *Reynolds v. Manley,* 223 Ark. 314, 265 S.W.2d 714 (1954), the court explicitly acknowledged and considered two exceptions to the doctrine by stating the following:

> The courts and authorities in general recognize at least two exceptions to the general rule upon which appellees here rely, namely: (a) Where a defect in construction caused by the negligence of the contractor is so concealed that it could not reasonably be detected on inspection by the proprietor, and; (b) Where

> the job is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons.

*Id.* at 320; *see also Milam v. Midland Corp.*, 282 Ark. 15, 665 S.W.2d 284 (1984) (court found construction was not imminently dangerous); *Chesser v. King*, 244 Ark. 1211, 428 S.W.2d 633 (1968) (court applied doctrine, holding no contractor liability because no nuisance *per se*, imminent danger, or latent defect was shown).

In *Reynolds*, the plaintiff had been forced to pull his car off the highway and onto a concrete extension slab. At the end of the extension slab, the right wheel of plaintiff's car had gone into a hole or rut, causing him to lose control and to swerve into the path of an oncoming car. As a result of the collision, plaintiff's wife died and the plaintiff and his children were injured. On review, this court determined that neither the imminent danger nor latent defect exception had been proven and, therefore, under the general rule of the accepted-work doctrine, the contractor could not be held liable. In support of its adherence to the general rule of no liability under the doctrine, the *Reynolds* court reasoned that holding the contractor liable under such a situation would cause contractors to be subjected to potential liabilities so great as to deter them from undertaking such work, or would force them to demand such exorbitant prices as to make further road construction impossible, and render it questionable as to the point in time such liability would cease. *Id.* at 323.

In the case of *Sproles v. Associated Brigham Contractors, Inc.*, 319 Ark. 94, 889 S.W.2d 740 (1994), we acknowledged the forceful authority in support of abandoning the accepted-work doctrine. *Sproles*, 319 Ark. at 98 (citing RESTATEMENT (SECOND) OF TORTS § 385 (1965); W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 104A (5th ed. 1984); *McDonough v. Whalen*, 365 Mass. 506, 313 N.E.2d 435 (1974); *Johnson v. Oman Const. Co.*, 519 S.W.2d 782 (Tenn. 1975); *Kristek v. Catron*, 7 Kan. App.2d 495, 644 P.2d 480 (1982); *Nichols v. Corntassel*, 852 P.2d 583 (Mont. 1993)). We also announced a willingness to

reexamine the doctrine, although the court added that no infer-
ence should be drawn from such an invitation.

■ As previously mentioned, the accepted-work doctrine
is based on a privity of contract theory, which is a concept that has
become virtually extinct in American jurisprudence, at least to the
extent privity had been recognized earlier in the product-liability
context. Citing the *Winterbottom* and *MacPherson* cases, our court
in *Chapman Chemical Co. v. Taylor*, 215 Ark. 630, 222 S.W.2d 820
(1949), adopted the doctrine of manufacturers's liability based
upon foreseeability rather than privity of contract. *See also* Ark.
Code Ann. § 4-86-101 (Repl. 1996) (General Assembly statuto-
rily provided that the lack of privity between plaintiff and defend-
ant shall be no defense in any action brought against the
manufacturer or seller of goods to recover damages for breach of
warranty, express or implied, or for negligence).

■ During oral argument, appellees urged that the foresee-
ability and negligence rules applicable in a products liability case
should not be controlling in an owner-contractor situation. They
assert that, in a products case, a manufacturer has the ability to
recall the defective products, but in the owner-contractor situa-
tion, once an owner takes control of the work or improvement,
the contractor, unless he has the owner's permission, cannot cor-
rect a defect or negligent work condition. The treatise, THE LAW
OF TORTS, discusses similar distinctions in these two situations
and addresses them in the following way:

> The manufacturer makes standard goods and develops standard
> processes. Defects are harder to find in the contractor's special
> jobs. Again, the owner usually gives more thorough inspection
> to a building or structure than a vendee gives to a chattel. And a
> longer time may elapse between construction and injury in the
> contractor's case with the consequently greater opportunity for
> intervening factors to play a part. These considerations, however,
> go to the question of negligence and should be treated simply as
> problems of proof in individual cases. They should not be
> erected into a rule of thumb. And the modern tendency has
> been to measure the scope of duty here by the same broad princi-

ples of negligence as are generally applied in the field of accidental injuries.

5 HARPER, JAMES & GRAY, THE LAW OF TORTS § 18.5 (2d ed. 1986) (footnotes omitted). Appellees in the instant case tend to rely heavily on the possibility that an owner, such as the AHTD, could exercise control over the improvement to exclude a contractor from correcting a negligent condition that the contractor belatedly discovered. Of course, any such refusal could well be argued and considered an intervening proximate cause when applying applicable negligence principles, and such a scenario offers little logic for the doctrine's retention. AMI Civil 3d, 503 (1989).

■ ■ In conclusion, as noted above, the accepted-work rule has been thoroughly criticized as anachronistic and has provided unwarranted exceptions to general negligence principles. It has been said to have provided harsh results and many exceptions have been adopted to ameliorate such harshness. In our recent decision in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), we stated that, when a judicially created rule becomes outmoded or unjust in its application, it is appropriate for the judiciary to modify it. *Id.* at 151; *see also Nelson v. Timberline Int'l, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998). From our review of the substantial legal authority on the subject, we believe the better-reasoned view is that the accepted-work doctrine is both outmoded and often unnecessarily unfair in its application. We believe it would be a mistake to continue to apply a doctrine based upon privity of contract when the third party's injury is foreseeable.

For the reasons above, we reverse and remand.

Special Associate Justice SEARCY HARRELL joins this opinion; SMITH, J., dissents; BROWN, J., not participating.