Denise SMITH, *Individually*, and as *Natural Mother* and *Guardian* of Jessica Moody, *a Minor*, and Deidre Moody, *a Minor*; Jo Ann Cross, *Individually*, and as *Administratrix* of the Estate of Cauley Shane Coffey, *Deceased*; Jeannie Bright Love, *Individually*, and as *Administratrix* of the Estates of Amy M. Bright, *Deceased*, and Emile Bright, *Deceased*; Stacey Jackson Montgomery, *Individually*, and as *Administratrix* of the Estate of Michael Jackson, *Deceased*, and as *Natural Mother* and *Guardian* of Erica Jackson, *a Minor*; and Tom M. Young, *Administrator* of the Estate of Vira A. Young, *Deceased v.* ROGERS GROUP, INC., John Doe 1 through 5; Hartford Fire Insurance Company; and National Union Fire Insurance Company AND James Evans *v.* Rogers Group, Inc.; John Doe 1 through 5; Marilyn K. Loftin, *Administratrix* of the Estate of Heath Loftin, *Deceased*; Hartford Fire Insurance Company; and National Union Fire Insurance Company

01-1028 72 S.W.3d 450

Supreme Court of Arkansas
Opinion delivered April 18, 2002

*Gary Eubanks & Associates*, by: *William Gary Holt* and *Robert S. Tschiemer*, for appellants.

*Laser Law Firm*, by: *Sam Laser* and *Brian A. Brown*, for appellee Hartford Fire Insurance Company.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson* and *Julia L. Busfield*, for appellee National Union Fire Insurance Company.

D ONALD L. CORBIN, Justice. The central issue in this case is whether the acquired-immunity doctrine is still a viable defense in this state. The Faulkner County Circuit Court concluded that it is and granted summary judgment to Appellee Rogers Group, Inc., and its insurers, Appellees Hartford Fire Insurance Company and National Union Fire Insurance Company. This case stems from three automobile accidents that occurred on U.S. Highway 65 North, between Conway and Greenbrier. Appellants and their decedents brought suit against Rogers, as the contractor for the Arkansas Highway and Transportation Department (AHTD), alleging that Rogers was negligent in applying Type 3 asphalt to the highway, knowing that it should not be used on such a high-volume highway. The trial court found that Rogers was not negligent because it followed AHTD's specifications exactly. Thus, because AHTD, as a state agency, enjoys sovereign immunity, the trial court found that Rogers acquired immunity from any liability occurring as a result of its performance of the contract with AHTD. Appellants raise four points for reversal. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(4), as it involves issues of substantial public interest. We find no error and affirm the grant of summary judgment.

In the spring of 1996, AHTD took bids on a job project to overlay a 6.28 mile stretch of U.S. Highway 65 North, between Conway and Greenbrier. The job called for the use of Type 3 asphalt. Rogers presented a bid, and it was accepted by AHTD, on the condition that Rogers would first submit a sample of the proposed Type 3 asphalt mixture for approval by AHTD's engineers. Rogers employed the engineering company of Grubbs, Garner, and Hoskyn, Inc., to prepare the asphalt mixture. The sample was prepared by engineer Steven Garrett. Rogers forwarded the sample to AHTD, and its engineers approved the sample for use on the project.

Rogers began work on the project in July 1996. Every day during the project, AHTD had an engineer and other employees on sight, to inspect and oversee the work on the project. AHTD also had personnel at the asphalt plant, who monitored the asphalt and took samples of the mixture to make sure that it continued to meet AHTD's specifications. The job was substantially completed in the middle of September 1996 and was finally inspected by AHTD on September 29. The final inspection revealed that the job had been done according to AHTD's specifications and was thus accepted by AHTD. Rogers had no further contact with the work site after the final inspection.

Approximately two months later, on November 24, 1996, Michael Jackson was driving his car on that stretch of Highway 65 when his vehicle hydroplaned and crossed the center line, striking a car driven by Vira Young. Both Jackson and Young were killed in the accident. Jackson's wife, Stacey, and his infant daughter, Erica, were injured. Although Erica's injuries were relatively minor, Stacey suffered severe injuries requiring weeks of intensive-care hospitalization.

On March 2, 1997, another accident occurred on the same stretch of highway. This time, a car driven by Amy Bright hydroplaned during heavy rain, causing the car to cross the center line and strike a car driven by Denise Smith. Bright and her two passengers, Cauley Coffey and Emile Bright, were fatally injured. Smith and her two minor daughters, Jessica and Deidre Moody, suffered severe injuries.

Finally, on August 2, 1998, James Evans was driving his truck on that same stretch of Highway 65 when he was struck by a truck driven by Heath Loftin. The accident occurred when Loftin's vehicle hydroplaned and crossed the center line, striking Evans's truck. As a result, Loftin was killed and Evans was injured.

Appellants in this case are the victims of the foregoing accidents and their survivors. They sued Rogers, its two insurers, and a number of Rogers's employees, alleging negligence in applying Type 3 asphalt to that 6.28 mile stretch of highway. Appellants assert that Rogers knew that Type 3 asphalt should not have been used on such a high-volume highway, because its use increased the potential for accidents caused by hydroplaning. Additionally, Appellant Evans alleged that Loftin was concurrently negligent with Rogers.[1]

The basis of Appellants' claim against Rogers is an affidavit filed by Steven Garrett, the engineer who prepared the Type 3 mixture used on the project. His affidavit reflects that he spoke with a quality-control employee of Rogers and warned the employee about using Type 3 asphalt on the project. Garrett stated that using Type 3 asphalt on a highway of such high volume was imminently dangerous. He stated that the problems with the mix would cause hydroplaning, due to the sheeting action of water runoff during heavy rains. His affidavit reflects in pertinent part:

> At the time that Rogers Group, Inc., was awarded the high volume overlay project on Highway 65 North, it was aware of each of the above mentioned problems with using the design asphalt mix on a highway application, and that it was using Type 3 design mix improperly in the wrong application. I spoke with a quality control materials employee of Rogers Group, Inc., who told me that he was using Type 3 design asphalt mix for the highway overlay application, and that he was aware that it was never designed for that type of application. I told him that the mix

---

[1] No judgment has been entered as yet against the individual Rogers's employees, John Does 1 through 5, or Loftin's Estate, Marilyn K. Loftin, Administratrix; hence, they are not parties to this appeal. We review the summary-judgment order pursuant to Ark. R. Civ. P. 54(b), as the trial court certified the immediate appeal of this order.

design should never be used for an overlay project on this highway.

Appellants alleged that based on Garrett's warning, Rogers was negligent in (1) using the Type 3 asphalt mix on the overlay project, and (2) failing to warn AHTD and the public of the dangers of using such a mix on that particular stretch of highway. As for the latter allegation, Appellants claim that Rogers's failure to warn amounted to a negligent performance of the contract with AHTD.

Rogers filed a motion for summary judgment, claiming that any negligence in the use of Type 3 asphalt was the result of the contract specifications set out by AHTD, and that, accordingly, it was shielded from liability by virtue of the sovereign immunity enjoyed by AHTD. Rogers asserted that all the decisions were made by AHTD, including the specific requirement for the use of Type 3 asphalt. It further asserted that it performed the contract exactly as specified by AHTD, and that, as a result, it was not liable for any injuries caused by the use of Type 3 asphalt on the highway.

In support of its motion, Rogers submitted an affidavit from AHTD's resident engineer, C.W. McMillian, who oversaw the project on this highway. McMillian's affidavit reflected that AHTD specified the type and composition of asphalt to be used in the job, as well as the procedures to be used in applying the asphalt and preparing the surface for the asphalt. McMillian stated that AHTD had selected Type 3 asphalt for use on the project on the basis that it was suitable and appropriate for the project. He stated further that since its application, the asphalt mixture had performed satisfactorily on Highway 65. Most significantly, McMillian's affidavit reflected that AHTD would have used Type 3 asphalt on the project regardless of whether Rogers had notified AHTD that Type 3 was not suitable for the job.

The trial court granted summary judgment to Rogers on the basis of acquired immunity. The trial court based its conclusion on the fact that Rogers merely implemented the plans and specifications laid down by AHTD, and that AHTD had completely approved the work done by Rogers. The trial court also dismissed

the claims against the two insurers, concluding that because Rogers was not negligent in the performance of its contract with AHTD, there was no cause of action against the insurers.

For reversal, Appellants argue that the trial court erred in granting summary judgment on the basis of the doctrine of acquired immunity. They claim that this defense is no longer viable under Arkansas law, following the holding in *Suneson v. Holloway Constr. Co.*, 337 Ark. 571, 992 S.W.2d 79 (1999). Alternatively, they assert that Rogers's conduct falls within an exception to the acquired-immunity doctrine, because Rogers negligently performed the contract with AHTD. Appellants also argue that there was a material issue of fact on the issue of Rogers's duty to warn AHTD. They argue further that if Rogers is immune, they should be allowed to proceed directly against the two insurers. Lastly, they argue that the trial court erred in striking some exhibits and an affidavit filed by Appellants the day before the summary-judgment hearing. None of these arguments has any merit, and we affirm the trial court's judgment.

■ ■ At the outset, we note our standard of review. Summary judgment is no longer viewed by this court as a drastic remedy; rather, it is viewed simply as one of the tools in a trial court's efficiency arsenal. *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001). That being said, summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Id.* All proof must be viewed in the light most favorable to the nonmoving party, and any doubts must be resolved against the moving party. *Short v. Westark Community College*, 347 Ark. 497, 59 S.W.3d 432 (2002). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.*

## I. Acquired Immunity

For their first point for reversal, Appellants argue that the acquired-immunity doctrine is no longer a viable defense in Arkansas following this court's decision in *Suneson*, 337 Ark. 571,

992 S.W.2d 79. Rogers argues that *Suneson* only abolished the accepted-work doctrine and did not affect the viability of the acquired-immunity doctrine. To support its argument, Rogers relies on two recent appellate decisions stemming from the same factual allegations involved in this case: *Barker v. Rogers Group, Inc.,* 74 Ark. App. 18, 45 S.W.3d 389 (2001), and *Engelhardt v. Rogers Group, Inc.,* 132 F. Supp. 2d 757 (E.D. Ark. 2001). In *Barker,* the court of appeals specifically rejected the argument that *Suneson* had effectively abolished the acquired-immunity doctrine. Instead, it concluded that there were different rationales and public-policy considerations behind the two doctrines. The *Engelhardt* decision did not actually consider the holding in *Suneson,* but it nonetheless concluded that Arkansas law supported application of the acquired-immunity doctrine in that case. We agree with both of these cases on this point.

■ The doctrine of acquired immunity provides that a contractor who performs in accordance with the terms of its contract with a governmental agency and under the direct supervision of the governmental agency is not liable for damages resulting from that performance. *See Muskogee Bridge Co. v. Stansell,* 311 Ark. 113, 842 S.W.2d 15 (1992); *Southeast Constr. Co., Inc. v. Ellis,* 233 Ark. 72, 342 S.W.2d 485 (1961); *Barker,* 74 Ark. App. 18, 45 S.W.3d 389; *Jordan v. Jerry D. Sweetser, Inc.,* 64 Ark. App. 58, 977 S.W.2d 244 (1998); *Guerin Contractors, Inc. v. Reaves Food Center,* 270 Ark. 710, 606 S.W.2d 143 (Ark. App. 1980). Under this theory, "a contractor for a public agency shares the sovereign immunity of the public body from liability for incidental damages necessarily involved in the performance of the contract." *Id.* at 713, 606 S.W.2d at 144-45 (citing 64 AM. JUR. 2D *Public Works and Contracts* § 135). However, this doctrine does not protect a contractor who performs the contract in a negligent manner resulting in damages to others. *Id.*

■ In *Ellis,* this court held that "where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damages that might result." 233 Ark. at 77, 342 S.W.2d at 488 (citing 40 C.J.S. *Highways* § 212) (quoting *Ference v. Booth & Flinn Co.,* 370 Pa. 400, 403, 88 A.2d 413, 414 (1952)). The clear

purpose of this immunity is to protect the contractor who performs the work as specified from bearing the brunt of liability based on the actions or decisions made solely by the governmental agency, which is immune from suit in tort. There are also practical reasons underlying the doctrine:

> If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force for the purpose of interpreting these plans, and was not permitted to follow the orders of the engineering force of its superior, then the cost of public improvement would be so increased as to make them almost prohibitive.

*Id.* (quoting *Wood v. Foster & Creighton Co.*, 191 Tenn. 478, 482-83, 235 S.W.2d 1, 3 (1950)).

In contrast, the accepted-work doctrine, which this court abolished in *Suneson*, 337 Ark. 571, 992 S.W.2d 79, provided that after the contractor completed the work and turned it over to, and it was accepted by, the contracting party, the contractor incurred no further liability to third parties by reason of the condition of the work. *Id.* Upon acceptance, the responsibility for any defects in the work shifted to the contracting party. *Id.* Thus, unlike the acquired-immunity doctrine, which is designed to protect innocent contractors from liability based on decisions made and instructions given by the sovereign, the accepted-work doctrine had the effect of shielding *negligent* contractors from liability once they had finished construction and their work had been accepted by the contracting party. This court abolished the doctrine of accepted work for a number of reasons, namely that it was antiquated, it provided harsh results, and the exceptions to the doctrine had virtually swallowed up the rule. *Id.*

This court's decision to abolish the accepted-work doctrine hardly supports the conclusion that it has likewise abandoned the defense of acquired immunity. To the contrary, the reasons and considerations behind acquired immunity are just as valid today as they have ever been. A contractor who performs in accordance with the terms of its contract with a governmental agency and under the direct supervision of the governmental agency should not be held liable for damages resulting from that

performance. The only exception is where the contractor is negligent in the performance of the contract. Unlike the accepted-work doctrine, acquired immunity serves the legitimate purpose of extending the government's immunity to shield an innocent contractor who has completely performed the work to the government's plans and specifications. Moreover, were acquired immunity not available, the costs of public improvements would be greatly increased to the public's detriment. Accordingly, we conclude that the acquired-immunity doctrine is still a viable defense in this state. That being said, we now consider the doctrine's applicability in this case.

The undisputed evidence submitted below demonstrates that Rogers performed its contract with AHTD exactly as specified. According to the affidavits filed by Rogers's employee, Eddie Reidmueller, and AHTD's resident engineer, McMillian, Rogers completed the project in full compliance with the specifications set out by AHTD. There was an AHTD engineer on sight at the project every day, directing and inspecting the contractor's work. There was also an engineer on sight at the asphalt plant every day, checking the asphalt mixture to make sure that it met with AHTD's specifications. Reidmueller stated in his affidavit that Rogers fully complied with the specifications provided by AHTD, and that neither Rogers nor any subcontractors deviated in any way from the instructions and specifications provided by AHTD.

■ In his affidavit, McMillian stated that it was his responsibility, and that of other on-site AHTD employees, to oversee the project and inspect the type, placement, composition, and application of the surfacing materials to assure compliance with the job's specifications. McMillian stated that if it had been determined that Rogers's work was not in compliance with AHTD's specifications, he would have promptly brought it to the attention of Rogers and would have required the matter to be corrected promptly. McMillian stated that the final inspection of the project was done on September 29, 1996, and that AHTD determined that the work and the asphalt were in compliance with the contract specifications. This proof demonstrates that Rogers performed the contract in full compliance with the specifications mandated by AHTD and under the direct and constant supervi-

sion of AHTD. Accordingly, we affirm the trial court's ruling that Rogers was entitled to rely on the defense of acquired immunity.

## II. Negligent Performance of Contract

Appellants next argue that the trial court erred in refusing to find that Rogers's actions fell within an exception to the doctrine of acquired immunity, because it was negligent in the performance of the contract. Specifically, Appellants claim that Rogers was contractually obligated to warn AHTD and the public of any errors in the specifications, and it failed to fulfill this duty. As such, Appellants assert that Rogers negligently performed the contract. We disagree.

Appellants' argument on this point is based entirely on the affidavit of Garrett, the engineer who prepared the particular mix of Type 3 asphalt that was used on this project. According to Garrett's affidavit, which we must view in a light most favorable to Appellants, Garrett spoke with a quality-control employee of Rogers and warned that Type 3 asphalt should never be used on an overlay project on such a high-volume highway. Garrett also stated that the employee indicated to him that he was aware that Type 3 asphalt was never designed for that type of application. Based on this information, Appellants argue that Rogers had a duty to warn AHTD of the danger in using Type 3 asphalt on this project.

Appellants argue further that Rogers's duty to warn arose out of its contract with AHTD. They specifically rely on section 105.05 of the AHTD's 1993 edition of its *Standard Specifications for Highway Construction,* which provides:

> The Contractor shall take no advantage of any apparent error or omission in the plans or specifications, and shall immediately notify the Engineer of any such errors or omissions discovered. The Engineer will then make such corrections and interpretations as may be deemed necessary for fulfilling the intent of the plans and specifications.

Appellants contend that the information conveyed by Garrett fell within the category of an error or omission in the plans or specifi-

cations for the job. Appellants argue that by failing to convey the information received from Garrett, Rogers was negligent in its contractual duties to AHTD. Appellants argue further that the trial court erred in placing so much emphasis on McMillian's affidavit regarding the effect that any warning would have had on AHTD.

Appellants rely on this court's holding in *Bushong v. Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992), to support their argument that had a warning been given by Rogers to AHTD, there is a presumption that such warning would have been heeded. Appellants also argue that *Bushong* supports their claim that an issue of fact remains for the jury as to whether Rogers sufficiently rebutted the presumption. In *Bushong*, this court held:

> Once a plaintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions. This presumption may be rebutted by evidence "which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." *Safeco Ins. Co. [v. Baker]*, 515 So.2d 655, 657 (La. Ct. App. 1987); *See also Johnson v. Niagra*, 666 F.2d 1223 (8th Cir. 1981). In this case, appellant himself admitted that he had never read a label on a cleaning product during the three years he worked at Stewart Electric. Given this, we cannot say the trial court erred in finding appellant's failure to read the label precluded his claim as any warning or instruction would have been futile since appellant would not have read it.

*Id.* at 234, 843 S.W.2d at 811.

Here, the presumption was rebutted by McMillian's affidavit, which demonstrates that such a warning would have fallen on deaf ears and would not have altered the contract specifications. McMillian's affidavit reflects:

> 8. The Department selected Type III asphalt. The selection of Type III asphalt was made based upon a determination that it was suitable and appropriate for Job R80087. Since its application, Type III asphalt has performed satisfactorily on Highway 65.
>
> 9. *Had Rogers Group employees advised the Department* that they were supposedly informed *that Type III was not suitable for this*

*job, we would have informed them that Type III was suitable and would have directed that work continue using Type III asphalt.* [Emphasis added.]

Appellants have provided no proof to the contrary. Thus, there is no issue of fact for the jury to decide. Arkansas Rule of Civil Procedure 56(e) requires the nonmoving party to meet proof with proof when summary judgment is sought. That rule provides in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but *his response, by affidavits or as otherwise provided in this rule, must set forth specific facts* showing that there is a genuine issue for trial. [Emphasis added.]

Appellants have offered no proof, through affidavits or otherwise, to contradict McMillian's affidavit. We disagree with Appellants that this is an issue of credibility for the jury. This is merely an issue of proof, with the undisputed proof showing that AHTD would not have heeded any warning Rogers could have made regarding the use of Type 3 asphalt on the project in question. Accordingly, we affirm the trial court's conclusion that Rogers was not negligent in the performance of its contract with AHTD by failing to warn the agency about using Type 3 asphalt on the overlay project.

 We likewise affirm the trial court's conclusion that Rogers was not negligent in failing to warn the public of the dangers of Type 3 asphalt. Appellants' reliance on section 107.01(b) of AHTD's *Standard Specifications* is misplaced. That section merely places a burden on the contractor to take steps to ensure the public's safety while the contract work is being performed. That section provides in pertinent part:

The Contractor shall comply with applicable Federal, State, and local laws governing safety, health, and sanitation. The Contractor shall provide safeguards, safety devices, and protective equipment and take any other needed action necessary to protect the life and health of employees *on the job* and the safety of the public and to protect property *in connection with the performance of the work* covered by the Contract. [Emphasis added.]

We agree with Rogers that this provision pertains to the contractor's safety obligations while the work is being performed. We do not view this section as creating a generalized duty to warn the public of dangers that may arise out of the sovereign's plans or specifications for the job. Accordingly, the trial court was correct in granting summary judgment to Rogers, as it was not negligent in the performance of its contract with AHTD.

### III. Direct Action Against the Insurers

For their third point on appeal, Appellants argue that the trial court erred in dismissing their claims against Rogers's two insurers. They assert that if Rogers is entitled to acquired immunity, they should be allowed to proceed directly against its insurers, pursuant to Ark. Code Ann. § 23-79-210 (Repl. 1999). Subsection (a)(1) provides in pertinent part:

> *When liability insurance is carried by any* cooperative nonprofit corporation, association, or organization, or by any municipality, agency, or subdivision of a municipality or of the state, or by any improvement district or school district, or by any other *organization or association of any kind or character and not subject to suit for tort*, and if any person, firm, or corporation suffers injury or damage to person or property *on account of the negligence or wrongful conduct* of the organization, association, municipality or subdivision, its servants, agents, . . . then the person, firm, or corporation so injured or damaged *shall have a direct cause of action against the insurer* with which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy. [Emphasis added.]

This court has heretofore only applied this provision to the insurers of charitable or nonprofit organizations, governmental entities, and county-owned hospitals. *See Cherry v. Tanda, Inc.*, 327 Ark. 600, 940 S.W.2d 457 (1997); *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996); *Berry v. Saline Memorial Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995); *Jarboe v. Shelter Ins. Co.*, 317 Ark. 395, 877 S.W.2d 930 (1994).

Section 23-79-210 is not applicable in this case for two reasons. First, it only provides for direct actions against an

insurer in the event that the organization at fault is immune from suit in tort. Immunity from suit is the entitlement not to stand trial, while immunity from liability is a mere defense to a suit. *See Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). Acquired immunity is not immunity from suit; rather, it is immunity from liability. This court explained in *Ellis*, 233 Ark. 72, 342 S.W.2d 485:

> It is hornbook law that the *immunity from suit* of the sovereign state does *not* extend to independent contractors doing work for the state. But it is equally true that where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not *liable* for any damages that might result.

*Id.* at 77, 342 S.W.2d at 488 (citation omitted) (emphasis added) (quoting *Ference*, 370 Pa. 400, 403, 88 A.2d 413, 414). Unlike AHTD, Rogers is not an entity that enjoys immunity from suit in tort. This conclusion is clearly illustrated by the fact that Appellants were able to sue the contractor directly in the circuit court. Because Rogers is not immune from suit, the direct-action statute is not applicable.

The second reason that section 23-79-210 is not applicable in this case is because its protections are only triggered where a person is injured "on account of the negligence or wrongful conduct of the organization[.]" We have already concluded in the previous two points that Rogers was entitled to rely on the defense of acquired immunity because it was not negligent in the performance of its contract with AHTD. Because Rogers was not negligent, its insurers may not be held responsible under the direct-action statute. The trial court was thus correct in dismissing the claims against the insurers.

### IV. Additional Materials in Opposition to Summary Judgment

For their last point on appeal, Appellants argue that the trial court erred in refusing to allow them to supplement the record with certain materials in opposition to the motion for summary judgment. The materials in question include an affidavit from an expert witness and copies of parts of AHTD's *Standard Specifica-*

*tions for Highway Construction.* There is no merit to Appellants' argument on this point.

■ During the hearing below, Rogers asked the court not to admit the materials because their last-minute submission would prejudice it. The trial court granted the motion, finding that the motion for summary judgment had been pending for over a year and one-half and that Appellants had ample time to get these materials filed, instead of waiting until the day before the hearing. Notwithstanding that ruling, the trial court *did* consider the materials in determining that Rogers was entitled to summary judgment. The trial court's order reflects:

> However, the Court did review this material, and heard oral arguments about the content of this material. The Court finds they would not have created a factual dispute in light of the uncontroverted affidavit of C.W. McMillian that Rogers Group performed the contract to the Department's specifications and under the Department's direction.

Thus, because the trial court actually considered the materials in granting summary judgment, Appellants suffered no prejudice from the original ruling striking the materials. We will not reverse a trial court's decision to disallow evidence absent a showing of prejudice. *See Columbia Nat'l Ins. Co. v. Freeman,* 347 Ark. 423, 59 S.W.3d 432 (2002); *Madden v. Aldrich,* 346 Ark. 405, 58 S.W.3d 342 (2001). We thus affirm the trial court's judgment.

Affirmed.

GLAZE, J., not participating.