2012 Ark. App. 83

**William C. GO, Jr., M.D., Appellant**

v.

**CROSSETT HEALTH FOUNDATION d/b/a Ashley County Medical Center, Appellees.**

No. CA 11–697.

Court of Appeals of Arkansas.

Jan. 25, 2012.

Billy J. Hubbell, Crossett, for appellant.

Bruce B. Tidwell, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Dr. William C. Go, Jr., brought a complaint for breach of contract against appellee Crossett Health Foundation d/b/a Ashley County Medical Center (ACMC). ACMC filed a motion to dismiss the complaint, and after a telephone conference on the motion the trial court entered an order indicating that the motion to dismiss would be treated as a motion for summary judgment due to the presentation of additional evidence. Both parties then submitted affidavits for the trial court's consideration. Upon considering the pleadings and proof submitted by the parties, the trial court entered an order granting ACMC's motion to dismiss, which was effectively an entry of summary judgment. *See Koch v. Adams,* 2010 Ark. 131, 361 S.W.3d 817 (when a circuit court considers matters outside of the pleadings, the appellate court will treat a motion to dismiss as one for summary judgment). Dr. Go now appeals, arguing that summary judgment was improper because there are genuine issues of material fact to be resolved, and therefore that this case should be reversed and remanded for trial. We affirm.

Summary judgment is no longer viewed as a drastic remedy; rather it is viewed simply as one of the tools in a circuit court's efficiency arsenal. *Marlar v. Daniel,* 368 Ark. 505, 247 S.W.3d 473 (2007). It should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Smith v. Rogers Group, Inc.,* 348 Ark. 241,

72 S.W.3d 450 (2002). All proof must be viewed in the light most favorable to the nonmoving party, and any doubts must be resolved against the moving party. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.*

On October 25, 2002, Dr. Go and ACMC entered into an "Agreement to Provide Income Guaranty" (the agreement). Under this contract, Dr. Go agreed to provide services as an orthopedic surgeon in the Crossett community for a two-year period beginning October 2, 2003, and ending October 1, 2005. The agreement provided an income guarantee during this two-year period. Specifically, ACMC agreed to supplement Dr. Go's income so that he was guaranteed to earn net income of $400,000 per year. The supplements were to be paid monthly by ACMC. The guarantee payments by ACMC were conditioned upon them either being repaid by Dr. Go, or otherwise forgiven if Dr. Go remained in practice in the Crossett area for an additional two years beyond the ending date of the agreement, pursuant to the following provision:

On the last day of the term of this Agreement, Physician shall provide the Medical Center with two promissory notes, each to represent one-half of the sum which Medical Center has paid in excess of Net Practice Income during the preceding two (2) years, interest on each to be at market rate. After the completion of one full year of practice beyond the term of this Agreement in the area, the Medical Center shall forgive the sum owing under the first promissory note. After the completion of a second full year of practice beyond the term of this Agreement, the Medical Center shall forgive the sum owing under the second promissory note. In the event that Physician leaves practice in the area prior to two years after the term of this Agreement, the full sum due and owing under one or both promissary notes at the time he closes his practice in the area shall immediately become due and owing.

Dr. Go began performing services pursuant to the agreement in October 2003 and ACMC began making the monthly guarantee payments. However, Dr. Go's medical practice did not generate as much income as the parties expected. On March 7, 2005, the parties executed a "Modification Agreement of Agreement to Provide Income Guarantee" (the modification agreement).

The modification agreement reflected the parties' mutual agreement that Dr. Go's medical practice had not been as successful as originally expected and would not be as successful in the future. The modification agreement further indicated that Dr. Go's indebtedness to ACMC was $456,816.38 as of January 31, 2005, and was expected to increase each additional month that the agreement remained in force. The modification agreement contained the following pertinent provisions:

1. The Agreement to Provide Income Guarantee shall continue through the 28th day of February, 2005.

2. Physician's indebtedness to Medical Center as of February 28, 2005, will be forgiven. Physician accepts responsibility for any state and federal taxes associated with the forgiveness of the indebtedness.

3. Effective March 1, 2005 the income guarantee shall be reduced to $300,000 annually and shall be extended through December 31, 2005 ($25,000 per month from March 2005 through December 2005). This Agreement shall terminate as of 11:59 pm, December 31, 2005 and

upon termination, neither party shall have any further obligation to the other.

. . . .

6. Medical Center shall begin immediately to recruit a replacement orthopedic surgeon to assume the practice as of January 1, 2006, or earlier as mutually agreed by the parties.

. . . .

9. Physician shall be responsible for professional liability insurance and for all charges and fees associated therewith.

10. As of January 1, 2006, Physician shall donate the Radiology equipment located in the office to Medical Center, which Medical Center will accept at the value of $10,000.00.

16. It is specifically understood and agreed that this Modification Agreement is mutually agreed to by Medical Center and Physician because the business practice of physician has not been as successful as originally planned, and that this Agreement does not reflect negatively on Physician's professional practice in any way. William C. Go, Jr., has indeed met all of his responsibilities as a member of the Medical Staff of Ashley County Medical Center. He is liked and respected by his colleagues on the Medical Staff and has conducted himself as a gentleman in all respects. His resignation from the Medical Staff will be due solely to the closure of his practice. He has been a member in good standing of the Medical Staff of Ashley County Medical Center throughout his tenure in Crossett, Arkansas.

As specified in the modification agreement, Dr. Go was paid $25,000 per month for the services he performed from March through December 2005.

On June 27, 2008, Dr. Go filed a complaint seeking damages for breach of contract. In his complaint, Dr. Go alleged that the modification agreement strictly benefitted ACMC and that he received no consideration for executing the modification agreement. Dr. Go further alleged that the modification agreement essentially terminated his practice in Ashley County. Dr. Go asserted that he was entitled to recover damages pursuant to the provisions of the original agreement and his reliance on that agreement. He alleged that these damages included $400,000 per year for two years beginning October 2, 2003, less sums actually paid by ACMC. Dr. Go also alleged as damages $65,379 that he paid for professional liability insurance, as well as damages associated with moving from his home and office.

On August 19, 2008, ACMC filed a motion to dismiss Dr. Go's complaint, Dr. Go responded to the motion, and both parties subsequently submitted affidavits. ACMC submitted the affidavit of its CEO, Russ Sword, wherein Mr. Sword swore that ACMC had fully performed its obligations under both the agreement and modification agreement. Dr. Go submitted his own affidavit, wherein he made the following assertions:

1. I am Dr. William C. Go, Jr., the plaintiff in the above captioned matter. I did enter into the agreement that was attached to my original complaint. I also entered into the modification agreement that was attached to my complaint.

2. Prior to my execution of the modification agreement, Mr. Russ Sword, Administrator of Crossett Health Foundation dba Ashley County Medical Center called me into his office on Friday and told me that "I was done." He intended to terminate my contract im-

mediately. I explained to Mr. Sword that I could not do this because patients that I had already performed surgery on required follow up treatment, and I would be abandoning my patients.

3. As a result of that Mr. Sword agreed to a modification so that I could remain at the hospital for a period of time to follow up with my patients. In order to obtain this additional time, I had to agree to a reduction in my income.

4. As a result of the modification, I was forced to give up my hospital privileges and my leased office space in the hospital. I was planning to remain at the Ashley County Medical Center for the two years that I was required to stay in the original agreement. I had already purchased a house in Crossett. I lost $100,000.00 on the sale of the house when my arrangement was terminated. I was never reimbursed for my medical malpractice insurance that was required under both the original agreement and the modification agreement. Furthermore, under the terms of the modification agreement I was required to pay an additional $70,000.00 to extend coverage following my termination.

5. Had I not been terminated or told that I was done by Mr. Sword, I would have remained in Crossett, Arkansas and would have continued my practice with Ashley County Medical Center for the follow up period of 2 years required to obtain forgiveness of any indebtedness that I had incurred.

6. I believe that I was terminated because the contract entered into by the hospital, the original agreement, had proven to be unprofitable for the hospi-

tal and the hospital wanted out of the contract. I was forced to sign the "Modification Agreement" or abandon my patients.

On March 11, 2011, the trial court entered an order dismissing Dr. Go's complaint, which we treat as a summary judgment in favor of ACMC. On appeal from that order, Dr. Go concedes that ACMC did what it was required to do under the modification agreement. However, he argues that the modification agreement was not a valid contract because it was not met with any additional consideration that was not contemplated by the parties' original agreement.[1]

In support of his argument on appeal, Dr. Go relies on *Youree v. Eshaghoff*, 99 Ark.App. 4, 256 S.W.3d 551 (2007), where we outlined the following contract principles:

The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. Consideration is any benefit conferred or agreed to be conferred upon the promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by the promisor, other than such as he is lawfully bound to suffer.

Under Arkansas law, there must be additional consideration when the parties to a contract enter into an additional contract. Although mutual promises may be adequate consideration to uphold a contract, the promise must have value to the party agreeing to the change; if no benefit is received by the obligee except what he was entitled to under the original contract, and the other par-

1. As ACMC points out in its brief, the affidavit submitted by Dr. Go could be construed as an assertion that he signed the modification agreement under duress. However, Dr. Go made no duress argument below nor does he make one on appeal. Therefore, our review is limited to the issue he does raise regarding whether he received any consideration.

ty to the contract parts with nothing except what he was already bound for, there is no consideration for the additional contract. If, without legal justification, one party to a contract breaks it, or threatens to break it, and to induce performance on his part the adversary party promises to give more than was originally agreed upon, no consideration is given for the promise; when the party who threatens to break the contract finally performs, he does no more than he was bound in law to do.

*Id.* at 9, 256 S.W.3d at 555 (citations omitted).

Dr. Go contends that the modification agreement was a benefit to ACMC but not to him. He notes that the modification agreement reduced his annual income from $400,000 to $300,000. Dr. Go further asserts that the modification agreement imposed additional liabilities on him, including paying for his liability insurance and donating radiology equipment valued at $10,000. Dr. Go contends that the forgiveness of his indebtedness to ACMC cannot be considered a benefit to him because under the terms of the original agreement that debt would have been forgiven so long as he practiced for two more years beyond the term of the agreement. Dr. Go submits that the modification agreement was merely a means for ACMC to cut its losses and terminate his membership in the medical staff at the hospital. Because the modification agreement conferred no additional consideration to Dr. Go, he argues that the modification agreement was invalid and that there remain genuine issues of material fact to be resolved in his breach-of-contract action against ACMC.

We hold that the trial court properly entered summary judgment in favor of ACMC because there were no genuine issues of material fact and ACMC was entitled to judgment as a matter of law.

Contrary to appellant's argument, the undisputed facts show that the modification agreement was a valid contract because it conferred additional consideration to Dr. Go beyond that which was contemplated by the original agreement.

Dr. Go correctly asserts that the modification agreement imposed additional obligations on him and benefitted ACMC. But it also benefitted Dr. Go. Specifically, the modification agreement forgave Dr. Go's significant debt of $456,816.38 to ACMC, and further provided an income guarantee to Dr. Go through December 2005 with no requirement that he reimburse ACMC for these payments. In *Bloodworth v. Booser,* 99 Ark. 238, 138 S.W. 457 (1911), the supreme court held that consideration is sufficient if what is given is of "some value" even though "it may only be of slight value." In the present case, this test was clearly met because the additional consideration was of significant value in that it forgave the debt contemplated in the original agreement without requiring Dr. Go to fulfill the obligation of remaining in practice in the Crossett area for an additional two years. Considering the undisputed fact that his practice had not been as successful as expected and was not expected to be more successful in the future, the additional consideration was evident. Therefore, ACMC was entitled to judgment as a matter of law on Dr. Go's breach-of-contract action, and we affirm the order of summary judgment.

Affirmed.

PITTMAN and GLOVER, JJ., agree.